# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued March 18, 2005        Decided August 9, 2005

No. 04-5177

S. D. EDMONDS
APPELLANT

v.

FEDERAL BUREAU OF INVESTIGATION,
APPELLEE

———

Appeal from the United States District Court
(USDC) for the District of Columbia
(No. 02cv01294)

———

*David K. Colapinto* argued the cause and filed the briefs for appellant. *Mark S. Zaid* and *Roy W. Krieger* entered appearances.

*Scott L. Nelson* and *Brian Wolfman* were on the brief for *amicus curiae* Public Citizen, Inc. in support of appellant.

*H. Thomas Byron, III*, Attorney, U.S. Department of Justice, argued the cause for appellee. With him on the brief were *Peter D. Keisler*, Assistant Attorney General, *Kenneth L. Wainstein*, U.S. Attorney, and *Douglas N. Letter* and *Leonard Schaitman*, Attorneys.

Before: GINSBURG, *Chief Judge*, and EDWARDS and GARLAND, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* GARLAND.

GARLAND, *Circuit Judge*:  Sibel Edmonds filed a Freedom of Information Act (FOIA) request for certain Federal Bureau of Investigation (FBI) records relating to the FBI's decision to terminate her employment.  She also sought expedited processing of that request.  When the FBI failed to grant or deny expedition, she obtained an order from the district court, compelling expedited processing and directing the Bureau to release all nonexempt documents by a specified date.  The FBI ultimately released a total of 346 pages.  Concluding that Edmonds "substantially prevailed" in her district court action, we reverse the court's determination that she was ineligible for an award of attorney's fees.

I

Edmonds worked as a contract linguist for the FBI between September 2001 and March 2002.  She alleges that she "witnessed and reported to governmental authorities systemic quality problems and breaches in security within the FBI's language division concerning translations relating to the FBI's counter-terrorism and counter-intelligence operations," and that she was terminated after her repeated "efforts to report these problems." Appellant's Br. at 9.  By letters dated April 19 and April 29, 2002, Edmonds submitted FOIA requests for FBI documents concerning herself, her security clearance, her allegations of wrongdoing at the Bureau, and investigations of persons related to her.  Although she requested expedited processing of her requests, the FBI did not release any documents or make any determination regarding whether she was entitled to expedited processing under the statute and

associated regulations. *Edmonds v. FBI*, No. 02-1294, Order at 2 (D.D.C. Dec. 3, 2002) ("December 3, 2002 Order").[1]

On June 27, 2002, Edmonds sued the FBI under FOIA, seeking an order to require production of the requested documents. *See* 5 U.S.C. § 552(a)(4)(B). On July 15, she filed an amended complaint alleging a statutory right to expedited processing of her FOIA requests and seeking an order directing expedition. Am. Compl. ¶¶ 21-22. Thereafter, Edmonds moved for partial summary judgment, asking the district court to order the FBI to expedite the processing of her requests. Edmonds relied on 5 U.S.C. § 552(a)(6)(E)(i), which requires agencies to promulgate regulations "providing for expedited processing of requests for records" in certain circumstances, and on § 552(a)(6)(E)(iii), which provides that "failure by an agency to respond in a timely manner" to a request for expedited processing "shall be subject to judicial review." The FBI opposed the motion and cross-moved for a stay until April 1, 2003, under *Open America v. Watergate Special Prosecution*

---

[1]Subject to exceptions and exemptions, FOIA requires that "each agency, upon any request for records . . . , shall make the records promptly available to any person." 5 U.S.C. § 552(a)(3)(A). Except in "unusual circumstances," *id.* § 552(a)(6)(B)(i), an agency must "determine within 20 days . . . whether to comply with such request [and] immediately notify the person making such request of such determination," *id.* § 552(a)(6)(A)(i). As discussed *infra*, FOIA also requires agencies to promulgate regulations "providing for expedited processing of requests for records," *id.* § 552(a)(6)(E)(i), and further requires that such regulations ensure "that a determination of whether to provide expedited processing shall be made, and notice of the determination shall be provided to the person making the request, within 10 days after the date of the request." 5 U.S.C. § 552(a)(6)(E)(ii)(I).

4

*Force*, 547 F.2d 605 (D.C. Cir. 1976).[2]

On December 3, 2002, the district court granted Edmonds' motion for partial summary judgment and denied the FBI's motion for a stay. December 3, 2002 Order at 8. The court concluded that Edmonds' request "easily me[t] th[e] standard" set by the Department of Justice's FOIA regulation, which provides for expedited processing in a "'matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence.'" *Id.* at 6 (quoting 28 C.F.R. § 16.5(d)(1)(iv)). On December 16, the court ordered the FBI to "complete the expedited processing of plaintiff's FOIA request and provide plaintiff with all documents as to which no exemption is being claimed" by January 31, 2003. *Edmonds v. FBI*, No. 02-1294, Order at 1 (D.D.C. Dec. 16, 2002). The court subsequently extended the deadline to February 10. *See Edmonds v. FBI*, 310 F. Supp. 2d 55, 56-57 (D.D.C. 2004).

On February 10, 2003, the FBI released 343 pages to Edmonds, but advised the court that it was withholding another 1143 pages responsive to her FOIA request. The FBI then moved for summary judgment, contending that the withheld

---

[2]FOIA permits a court to "retain jurisdiction and allow the agency additional time to complete its review of the records" if the "Government can show exceptional circumstances exist and the agency is exercising due diligence in responding to the request." 5 U.S.C. § 552(a)(6)(C)(i). In *Open America*, the court held that exceptional circumstances exist when an agency "is deluged with a volume of requests for information vastly in excess of that anticipated by Congress, . . . the existing resources are inadequate to deal with the volume of requests within the time limits of subsection (6)(A), and . . . the agency can show that it 'is exercising due diligence' in processing the requests." *Open America*, 547 F.2d at 616 (quoting 5 U.S.C. § 552(a)(6)(c)).

documents were exempt from disclosure. *See* 5 U.S.C. § 552(b). On July 24, the district court granted the FBI's motion with respect to all but three of the remaining pages. As to those pages, the court asked the FBI to provide additional information justifying withholding. *See id.* Thereafter, the FBI released the three pages without being ordered to do so. *See id.*

On December 12, 2003, Edmonds filed a motion for attorney's fees relating to the December 16, 2002 order requiring expedited treatment of her FOIA request, and to the FBI's release of the additional three pages. The district court denied Edmonds' fee motion, concluding that she had not "substantially prevailed" on her FOIA claim, as required for fee eligibility under the statute. *See* 5 U.S.C. § 552(a)(4)(E) (providing that "[t]he court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed"). Edmonds now appeals from the denial of her motion.

II

In *Buckhannon Board & Care Home, Inc. v. West Virginia Department of Health and Human Resources*, 532 U.S. 598 (2001), the Supreme Court considered the attorney's fees provisions of the Fair Housing Amendments Act, 42 U.S.C. § 3601 *et seq.*, and the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, which permit courts to award fees only to a "prevailing party." *Id.* §§ 3613(c)(2), 12205. The Court rejected the plaintiffs' contention, which it characterized as the "catalyst theory," that "a plaintiff is a 'prevailing party' if it achieves the desired result because the lawsuit brought about a voluntary change in the defendant's conduct." *Buckhannon*, 532 U.S. at 601. Rather, the Court ruled, for a litigant to be a "prevailing party," there must have been a "judicially sanctioned

change in the legal relationship of the parties." *Id.* at 605. "[E]nforceable judgments on the merits and court-ordered consent decrees," the Court said, suffice to create such a change. *Id.* at 604.

In *Oil, Chemical & Atomic Workers International Union v. Department of Energy* (*OCAW*), this circuit extended the holding of *Buckhannon* to the fee-shifting provision of FOIA. 288 F.3d 452, 454-57 (D.C. Cir. 2002). The *OCAW* court concluded that "the 'substantially prevail' language in FOIA [is] the functional equivalent of the 'prevailing party' language found in" the statutes interpreted in *Buckhannon*. *Id.* at 455-56. It "therefore h[e]ld that in order for plaintiffs in FOIA actions to become eligible for an award of attorney's fees, they must have 'been awarded some relief by [a] court,' either in a judgment on the merits or in a court-ordered consent decree." *Id.* at 456-57 (quoting *Buckhannon*, 532 U.S. at 603).

Edmonds asserts that she satisfied the requirements of *Buckhannon* and *OCAW* by obtaining partial summary judgment on the question of expedited review, an order from the district court directing release of nonexempt documents by February 10, 2003, and the actual release of 343 pages that day.[3]  She contends that she further prevailed by ultimately obtaining the release of the three additional pages. We review the district court's contrary determination, which rests on "an interpretation of the statutory terms that define eligibility for an award," de

---

[3]As a fallback, Edmonds "respectfully argues that *Buckhannon* does not apply in FOIA" cases.  Appellant's Br. at 32.  In light of our disposition, Edmonds does not need a fallback argument; but if she did, the contrary decision in *OCAW* would deprive this panel of the authority to consider such an argument.  *See, e.g.*, *Air Line Pilots Ass'n, Int'l v. United States Dep't of Transp.*, 838 F.2d 563, 565 n.3 (D.C. Cir. 1988).

novo. *National Ass'n of Mfrs. v. Department of Labor*, 159 F.3d 597, 599 (D.C. Cir. 1998).

III

The district court concluded, and the government argues on appeal, that Edmonds was not a prevailing party because "a court order requiring expedited processing does not rise to the level of a 'material alteration of the legal relationship of the parties necessary to permit an award of attorney's fees.'" *Edmonds*, 310 F. Supp. 2d at 58 (quoting *Buckhannon*, 532 U.S. at 604 (internal quotation marks omitted). We disagree. Prior to the December 16, 2002 order, the FBI was not under judicial direction to produce any category of documents by any specified date. Once the court issued that order, the Bureau was under judicial direction to produce all nonexempt documents, first by January 31 and then by February 10, 2003. The order thus amounted to a "judicially sanctioned change in the legal relationship of the parties." *Buckhannon*, 532 U.S. at 605. Thereafter, timely production of nonexempt documents by the FBI could no longer be described as a "voluntary change in the defendant's conduct." *Id.* at 600. To the contrary, the plaintiff then had an "enforceable judgment," *id.* at 607 n.9, and if the defendant failed to comply, it faced the sanction of contempt.

1. The district court thought *OCAW* stood for the proposition that the requirements of *Buckhannon* could not be satisfied until there was a "judgment by the Court regarding the legality of the government's withholding of documents." *Edmonds*, 310 F. Supp. 2d at 58. That is incorrect. *OCAW* -- which did not involve FOIA's expedited processing provision -- *did* hold that an August 23, 1999 order in that case "requir[ing] that the Energy Department complete its record review in 60 days" did not materially alter the legal status of the parties. 288 F.3d at 458. But as the *OCAW* court described it, that order was

quite different from the one issued by the district court in this case.

According to *OCAW*, "[b]efore August 23, the court had not ordered the Energy Department to turn over any documents; after August 23, the Energy Department still had no obligation to do so." *Id.* In the instant case, by contrast, the district court's December 16, 2002 order did not merely direct the FBI to "complete its record review." *Id.* Rather, it ordered the Bureau to turn over all nonexempt documents by a date certain. After the court issued that order (and the subsequent extension), the FBI had a clear obligation to turn over such documents by February 10. And the FBI did release 343 nonexempt documents that day.

Even so, the government maintains that an order directing expedited processing "does not meaningfully alter the legal obligations between a FOIA requester and the government; it merely allows one person to push aside the prior claims of others and jump to the head of the line." Appellee's Br. at 10. But whether or not an expedition order changes the government's obligations to the universe of *all* FOIA requesters, there is no question that it changes the government's obligations to the *plaintiff* requester. Not only must the agency permit the plaintiff to "jump to the head of the line" -- a meaningful obligation in itself -- it must produce the documents by the court-designated deadline.

2. Nor is it correct to argue, as the government does, that a party who obtains an expedition order has not "prevailed on the *merits* of at least some of [her] claims." *Buckhannon*, 532 U.S. at 603 (quoting *Hanrahan v. Hampton*, 446 U.S. 754, 758 (1980)) (emphasis added). Unlike the *OCAW* order, which the court described as a "scheduling order[]" that did not award the plaintiff "judicial relief on the *merits* of [its] complaint," 288

F.3d at 458-59, expedited processing of a FOIA request is a statutory right, not just a matter of court procedure. *See Al-Fayed v. CIA*, 254 F.3d 300, 304 (D.C. Cir. 2001) (treating a plaintiff's entitlement to expedited processing as a merits question).

FOIA's expedited-processing provision, added by the Electronic Freedom of Information Act Amendments of 1996, requires each agency to "promulgate regulations . . . providing for expedited processing of requests for records -- (I) in cases in which the person requesting the records demonstrates a compelling need; and (II) in other cases determined by the agency." 5 U.S.C. § 552(a)(6)(E)(i). The same amendments make the right to expedition judicially enforceable, stating that "[a]gency action to deny or affirm denial of a request for expedited processing pursuant to this subparagraph, and failure by an agency to respond in a timely manner to such a request[,] shall be subject to judicial review under paragraph (4)." *Id.* § 552(a)(6)(E)(iii).[4] Thus, the district court order granting Edmonds partial summary judgment and compelling production of nonexempt documents by February 10 was not, as the government suggests, a mere "procedural timing order." Appellee's Br. at 25. Rather, it vindicated a statutory right that Edmonds' complaint expressly claimed, *see* Am. Compl. ¶ 21, and granted her relief that she specifically sought, *see id.* ¶ 22. In short, it provided the plaintiff with full relief "on the merits" of her claim to expedited treatment.

We reject the government's further suggestion that

---

[4]The judicial review provision referenced in the quotation grants district courts "jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." 5 U.S.C. § 552(a)(4)(B); *see Al-Fayed*, 254 F.3d at 305.

whatever benefit Edmonds obtained from expedited processing was too insubstantial to entitle her to a fee award. *See* Oral Arg. Tape at 21:30-:40. Plainly, there is value to obtaining something earlier than one otherwise would. That is why people commonly pay -- and delivery services commonly charge -- a premium for next-day delivery of important documents. *Cf.* H.R. REP. NO. 93-876, at 6 (1974) (report on the 1974 FOIA amendments) ("[I]nformation is often useful only if it is timely. Thus, excessive delay by the agency in its response is often tantamount to denial."). The 1996 FOIA amendments underlined Congress' recognition of the value in hastening release of certain information, by creating a statutory right to expedited processing and providing for judicial review of its denial. When, pursuant to court order, the FBI finished processing Edmonds' request two months earlier than it would have in the absence of the order, she vindicated that statutory right.[5]

3. That the district court's order vindicated Edmonds' right to expedited processing midway through the proceeding, rather than at its end, is of no import. The government reads our

---

[5]Amicus curiae Public Citizen suggests that, even where a plaintiff does not rely on FOIA's expedited processing provision, court-ordered disclosure of nonexempt documents can make the plaintiff eligible for attorney's fees. *See* Public Citizen Br. at 13 ("[A] plaintiff who obtains an enforceable court order that . . . denies the government's request for an *Open America* stay to allow additional time to respond, and that accordingly compels the government to respond to her request on an accelerated basis, satisfies the *Buckhannon/OCAW* standard for recognition as a prevailing party."); *id.* at 8 ("FOIA requesters, even in the ordinary case, [have] an enforceable substantive entitlement to have their requests acted upon as promptly as possible . . . ."). Because Edmonds *does* rely on the statute's expedited review provision, we have no need to address this suggestion.

opinion in *Thomas v. National Science Foundation*, 330 F.3d 486 (D.C. Cir. 2003), as foreclosing the award of attorney's fees based on a grant of partial summary judgment or a preliminary injunction. But that is a misreading. What failed to suffice in *Thomas* was "partial summary judgment [that] did not afford appellees any concrete relief, beyond [a] mere legal declaration"; what was necessary for a fee award, we said, was a declaration that "requir[ed] some action . . . by the defendant." *Id.* at 493-94 (internal quotation marks omitted). Similarly, the deficiency in the *Thomas* injunction was not that it was preliminary, but that it did nothing more than "preserve[] the *status quo* pending final adjudication of the case," after which it was vacated and its existence adjudged by this court to have had no consequence. *Id.* at 493. The case was "easily distinguishable," we said, from those in which the "specific relief granted . . . was concrete and could not be reversed." *Id.*

Our recent decision in *Select Milk Producers, Inc. v. Johanns*, 400 F.3d 939 (D.C. Cir. 2005), confirms this reading. There, we rejected the government's suggestion that *Thomas* established a "*per se* rule that a preliminary injunction can never serve as the basis for deeming a plaintiff a 'prevailing party'" under a fee-shifting statute. *Id.* at 946. "Rather," we said, "*Thomas* held that, in the particular circumstances of that case, plaintiffs could not satisfy the 'prevailing party' requirement, because the preliminary injunction at issue had not changed the legal relationship between the parties." *Id.* As we explained, "*Thomas* did not suggest that, in a dispute such as the one [in *Select Milk*], where a preliminary injunction effected a substantial change in the legal relationship between the parties and provided plaintiffs with concrete and irreversible relief, plaintiffs could not be considered 'prevailing parties.'" *Id.*

Edmonds' eligibility for fees is consistent with *Thomas* and *Select Milk*. Here, the plaintiff received not just a *declaration* of

her right to expedited processing, but an *order* that "changed the legal relationship between the parties." *Id.* And unlike the preliminary injunction in *Thomas*, the December 16, 2002 order in this case "requir[ed] some action . . . by the defendant," *Thomas*, 330 F.3d at 493-94, and "provided plaintiffs with concrete and irreversible relief," *Select Milk*, 400 F.3d at 946. Indeed, this is an easier case than *Select Milk* because there was nothing "preliminary" about the order requiring the FBI to release all nonexempt documents by February 10; on the contrary, the order granted Edmonds a portion of the ultimate relief she sought in her complaint. The government is thus wrong in contending that "'[t]his type of judicial decree is not enough to warrant a fee award, because it represents not the end but the means of the litigation.'" Appellee's Br. at 17 (quoting *Thomas*, 330 F.3d at 494) (internal quotation marks omitted). In this case, expedited processing was not just the means but an end sought by the plaintiff. *See Role Models America, Inc. v. Brownlee*, 353 F.3d 962, 966 (D.C. Cir. 2004) (concluding that a plaintiff that obtained an injunction allowing it to compete for excess military property was a "prevailing party," because the injunction "gave [the plaintiff] the precise relief it sought").

4. Finally, the government insists that Edmonds is not a prevailing party because the December 16, 2002 order set a date for disclosure (initially January 31, subsequently extended to February 10) that was later than a deadline the FBI "had earlier agreed to meet." Appellee's Br. at 2. In response to Edmonds' motion for an order compelling expedited processing, the government did send her a letter offering to "advance the release date" for responsive documents to January 20, 2003 -- "in order to moot out [the] Motion." Letter from V. Mei to D. K. Colapinto (Oct. 8, 2002). But Edmonds declined the offer, advancing a counterproposal seeking, inter alia, the government's agreement to entry of a judicial consent decree a and payment of attorney's fees. Letter from Colapinto to Mei

(Oct. 11, 2002).

Thereafter, the government did not voluntarily proceed to expedite the process and meet the proffered January 20 date. To the contrary, it effectively withdrew its offer, filing a motion to stay the proceedings until April 1 and representing to the court that it would take until then to process Edmonds' request. *See* Def.'s Opp'n to Mot. for Partial Summ. J. & Cross Mot. for *Open America* Stay at 3 (Oct. 23, 2002); C. Kiefer Decl. ¶¶ 45-46 (Oct. 23, 2002). Accordingly, once the court granted Edmonds' motion and compelled production by February 10, the government's production on that date could not be regarded as voluntary.

Still, the government sees Edmonds as having gamed the system in a way that courts should prevent. Citing a 1976 opinion by Judge Friendly, the government complains that granting attorney's fees under these circumstances would "create perverse incentives to litigate solely for the sake of a fee award." Appellee's Br. at 16 (citing *Vermont Low Income Advocacy Council, Inc. v. Usery*, 546 F.2d 509, 513 (2d Cir. 1976)). In the government's view, "Edmonds' rejection of the proffered January 20 date was not based on any principled reason -- the avowed and only purpose of litigating the motion was an effort to obtain attorneys' fees." *Id.* Edmonds begs to differ. She insists that she declined to accept the offer primarily because the government refused to agree to make it judicially enforceable, a proviso she thought necessary in light of what she describes as the government's "prior failure to address her expedited processing requests . . . and [its] prior misleading and inconsistent statements . . . as to a possible release date." Appellant's Reply Br. at 5-6.

This dispute is beside the point. Indeed, it is ironic that the government presses Judge Friendly's opinion upon us, since in

*OCAW* it successfully urged this court to reject that same opinion -- which had reasoned (inter alia) that the government should not be allowed to "abort any award of attorney fees by an eleventh hour tender of the information requested" after "developments made it apparent that the judge was about to rule for the plaintiff." *OCAW*, 288 F.3d at 456 (quoting *Vermont Low Income Advocacy Council*, 546 F.2d at 513). Accepting the government's view, the *OCAW* court read *Buckhannon* as holding that "policy arguments could not carry the day because the meaning of 'prevailing party' was clear." *Id.* And in *Alegria v. District of Columbia*, 391 F.3d 262 (D.C. Cir. 2004), we similarly recognized that *Buckhannon* had given "short shrift" to policy arguments about the impact its "judicially sanctioned change" requirement would have on litigation strategies. *Id.* at 265 (citing *Buckhannon*, 532 U.S. at 607-08). For that reason, we felt ourselves likewise obliged to give short shrift to the *Alegria* plaintiffs' policy argument that refusing to permit fee awards for private settlements would lead to unnecessarily protracted litigation. *See id.* at 269.

In *Buckhannon*, the Supreme Court determined that, "[g]iven the clear meaning of 'prevailing party' in the fee-shifting statutes, . . . Congress ha[s] not extended any roving authority" to the courts to consider policy arguments in determining eligibility for attorney's fees. 532 U.S. at 610 (internal quotation marks omitted). There is nothing in *Buckhannon* or our own cases that would permit us to assume such a roving authority when the policy arguments are made by the government, rather than the plaintiff.

IV

We therefore conclude that Edmonds "prevailed" in her FOIA action by obtaining court-ordered, expedited processing of her request, which culminated in the release of 343

nonexempt pages. Generally, "plaintiffs may be considered prevailing parties for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing the suit." *Farrar v. Hobby*, 506 U.S. 103, 109 (1992) (internal quotation marks omitted); *see Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 790 (1989) ("[T]he *degree* of the plaintiff's success in relation to the other goals of the lawsuit is a factor critical to the determination of the size of a reasonable fee, not to eligibility for a fee award at all."). The same holds true in FOIA cases, given our determination that "the 'substantially prevail' language in FOIA [is] the functional equivalent of the 'prevailing party' language found in other statutes." *OCAW*, 288 F.3d at 455-56. Accordingly, Edmonds is eligible for an award of attorney's fees whether or not she also substantially prevailed by obtaining the release of an additional three pages, and we need not decide that issue.

That is not the end of the matter, however. Our case law makes clear that a FOIA plaintiff who "substantially prevail[s]" becomes *eligible* for attorney's fees; whether the plaintiff is actually *entitled* to a fee award is a separate inquiry that requires a court to consider a series of factors. *See, e.g.*, *Tax Analysts v. DOJ*, 965 F.2d 1092, 1093-94 (D.C. Cir. 1992); *see also* 5 U.S.C. § 552(a)(4)(E) (providing that "[t]he court *may* assess . . . reasonable attorney fees . . . in any case under this section in which the complainant has substantially prevailed" (emphasis added)). Because the district court found Edmonds ineligible for fees, it did not address the second step of the inquiry, *Edmonds*, 310 F. Supp. 2d at 58 n.2, which both parties agree is not before us. We therefore remand for the district court to consider that question.

*Reversed and remanded.*