Opinion for the Court by Circuit Judge ROGERS.
Concurring opinion by Circuit Judge TATEL.
Dissenting opinion by Senior Circuit Judge RANDOLPH.
ROGERS, Circuit Judge:
This is the second time William Davy has appealed the denial of his request for an award of attorney’s fees and costs under the Freedom of Information Act (“FOIA”). Davy first appealed the district court’s finding that he was ineligible, and this court reversed, holding that he was eligible as a prevailing party and remanding the case for the district court to determine whether Davy was entitled to fees upon applying a familiar four-factor test. Davy v. CIA (“Davy I”), 456 F.3d 162 (D.C.Cir.2006). On remand the district court again denied fees. This court must reverse and remand again. Because the district court’s findings on some factors are unsupported by the record, and the record indicates that Davy is the quintessential requestor of government information envisioned by FOIA, he is entitled to an award of fees and costs, and upon remand the district court shall enter an appropriate order.
I.
The details of Davy’s two FOIA requests are set forth in Davy I. Suffice it to say, in 1999, six years after Davy, acting pro se, filed his first FOIA request, the agency responded by refusing disclosure, stating that it could neither confirm nor deny the existence of responsive records due to national security reasons, citing FOIA exemptions (1) and (3). 456 F.3d at 163. Davy obtained a lawyer but no relief by administrative appeal and filed suit against the agency. The district court dismissed his complaint with leave to amend on the ground that it was based on a FOIA request made in 1993 and so was untimely. *1158 Davy then filed a second FOIA request in November 2000, renewing his initial request and seeking additional documents. In December 2000, having received no response from the agency, Davy amended his complaint to focus on his second FOIA request. On May 4, 2001, the district court entered an order adopting the parties’ agreement on a schedule for the agency to produce documents pursuant to Davy’s second FOIA request. Thereafter the agency produced on schedule some documents but not others and moved for summary judgment. Davy also moved for summary judgment. After the agency filed a superseding motion for summary judgment, the district court granted the agency’s motion.
Davy thereafter timely filed a motion for attorney’s fees under 5 U.S.C. § 552(a)(4)(E),[1] which the district court denied. On appeal, this court held that Davy had substantially prevailed and was therefore eligible for fees and remanded the case so that the district court could, in the first instance, apply a four-factor test for determining entitlement. Davy I, 456 F.3d at 166-67. Davy now appeals the district court’s finding on remand that he was not entitled to an award of fees. Our review of the district court’s application of the four-factor test is for abuse of discretion. Tax Analysts v. U.S. Dep’t of Justice, 965 F.2d 1092, 1094 (D.C.Cir.1992); see generally Kickapoo Tribe v. Babbitt, 43 F.3d 1491, 1497 (D.C.Cir.1995).
II.
This court, drawing on the Senate and House Committee reports for FOIA and its amendments,[2] explained long ago that the provision for attorney’s fees “was not enacted to provide a reward for any litigant who successfully forces the government to disclose information it wished to withhold,” but instead “had a more limited purpose — to remove the incentive for administrative resistance to disclosure requests based not on the merits of exemption claims, but on the knowledge that many FOIA plaintiffs do not have the financial resources or economic incentives to pursue their requests through expensive litigation.” Nationwide Bldg. Maint., Inc. v. Sampson, 559 F.2d 704, 711 (D.C.Cir.1977) (citing S.Rep. No. 93-854, at 17). The court embraced the view that a distinction is to be drawn between the plaintiff who seeks to advance his private commercial interests and thus needs no incentive to file suit, and a newsman who seeks information to be used in a publication or the public interest group seeking information to further a project benefit-ting the general public. Id. at 712-13 (quoting S.Rep. No. 93-854, at 19). The court observed in conclusion that:
The touchstone of a court’s discretionary decision under section 552(a)(4)(E) must be whether an award of attorney fees is necessary to implement the FOIA. A grudging application of this provision, which would dissuade those who have been denied information from invoking their right to judicial review, would be clearly contrary to congressional intent.
Id. at 715; see also LaSalle Extension Univ. v. FTC, 627 F.2d 481, 484 (D.C.Cir.1980).
*1159 With this understanding, the court has directed the district court to consider at least four criteria in determining whether a substantially prevailing FOIA litigant is entitled to attorney’s fees: (1) the public benefit derived from the case; (2) the commercial benefit to the plaintiff; (3) the nature of the plaintiffs interest in the records; and (4) the reasonableness of the agency’s withholding of the requested documents. Tax Analysts, 965 F.2d at 1093-94; see also S.Rep. No. 93-854 at 19. No one factor is dispositive, although the court will not assess fees when the agency has demonstrated that it had a lawful right to withhold disclosure. See Chesapeake Bay Found. v. USDA (“Chesapeake I”), 11 F.3d 211, 216 (D.C.Cir.1993), abrogated in part on other grounds by Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep’t of Health & Human Resources, 532 U.S. 598, 601-02, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001).
The first factor assesses “the public benefit derived from the case,” Tax Analysts, 965 F.2d at 1093, and requires consideration of both the effect of the litigation for which fees are requested and the potential public value of the information sought, see Chesapeake Bay Found. v. USDA (“Chesapeake II), 108 F.3d 375, 377 (D.C.Cir.1997); Cotton v. Heyman, 63 F.3d 1115, 1120 (D.C.Cir.1995); Tax Analysts, 965 F.2d at 1093-94. The district court found that “Davy’s FOIA request and subsequent litigation were intended to compel disclosure of information relating to the activities of a government agency (the CIA) in relation to a significant historical event,” and thus that this factor favors Davy. There can be little question that this factor favors Davy.
The information Davy requested — about individuals allegedly involved in President Kennedy’s assassination — serves a public benefit. See, e.g., Allen v. CIA, 636 F.2d 1287, 1300 (D.C.Cir.1980), overruled on other grounds by Founding Church of Scientology v. Smith, 721 F.2d 828, 830 (D.C.Cir.1983). At least one of the requested documents was not previously available to the public, and the agency did not challenge Davy’s description of the released documents as providing “important new information bearing on the controversy over former [District Attorney Jim] Garrison’s contention that the CIA was involved” in the assassination plot. Davy Decl. ¶ 2. Nothing in the record indicates that the releases, which occurred only after the May 4, 2001 order of the district court, were not a fruit of Davy’s litigation; despite Davy’s second FOIA request, the agency did not turn over any documents to him until after he filed suit. As this court stated in Davy I, it was the district court’s disclosure-schedule order that “provide[d] Davy with the precise relief his request sought.” 456 F.3d at 165.
The agency’s position — that the district court erred by failing to focus on the value of the litigation — presents a variation on its position, rejected in Davy I, that Davy did not “substantially prevail” in his litigation and so was not eligible for fees. Davy I, 456 F.3d at 166. Because nothing in the record indicates that Davy would have received the information without filing suit, the district court’s consideration of the value of the information sought necessarily entailed consideration of the value of the litigation that led to the disclosure of that information. The cases on which the agency relies are inapposite, involving a pre-litigation offer of release in Chesapeake II, 108 F.3d at 377, or litigation that produced only faster disclosure of publicly available information in Tax Analysts, 965 F.2d at 1094, or establishment of a legal precedent defining “public interest” in Cotton, 63 F.3d at 1120. The fact that some of the material turned over to Davy concerns an *1160 event of national importance and is newly released is a key distinction between this case and the litigation at issue in Tax Analysts.
Although the district court’s determination that the first factor weighed in Davy’s favor was not an abuse of discretion, we reach a different conclusion regarding its determination of the other factors. The second and third factors, which are often considered together, assess whether a plaintiff has “sufficient private incentive to seek disclosure” without attorney’s fees. See Tax Analysts, 965 F.2d at 1095. The second factor considers the commercial benefit to the plaintiff, while the third factor considers the plaintiffs interest in the records. Applying these factors, the district court found that because the requested documents were used to research a book that was later published, albeit with “presumably ... limited commercial success,” “Davy’s interest in the records was clearly commercial.” These findings are based on inappropriate considerations and clearly erroneous findings of fact.
First, the mere intention to publish a book does not necessarily mean that the nature of the plaintiffs interest is “purely commercial.” See S. Rep. No. 93-854, at 19. Surely every journalist or scholar may hope to earn a living plying his or her trade, but that alone cannot be sufficient to preclude an award of attorney’s fees under FOIA. “If newspapers and television news shows had to show the absence of commercial interests before they could win attorney’s fees in FOIA cases, very few, if any, would ever prevail.” Tax Analysts, 965 F.2d at 1096. Yet their activities often aim to ferret out and make public worthwhile, previously unknown government information — precisely the activity that FOIA’s fees provision seeks to promote. Furthermore, a conclusion that using information obtained under FOIA in connection with research for purposes of writing a book necessarily makes fees unavailable is inconsistent with the distinction that underlies this court’s analysis of the relevant factors. Cf. Nationwide, 559 F.2d at 713 (discussing Goldstein v. Levi, 415 F.Supp. 303, 305 (D.D.C.1976)).
Essentially, the first three factors assist a court in distinguishing between reques-ters who seek documents for public informational purposes and those who seek documents for private advantage. The former engage in the kind of endeavor for which a public subsidy makes some sense, and they typically need the fee incentive to pursue litigation; the latter cannot deserve a subsidy as they benefit only themselves and typically need no incentive to litigate. Thus, on the one hand, the court has reversed an award of attorney’s fees where the plaintiff was an attorney requesting information in preparation of private litigation for a client, Cotton, 63 F.3d at 1120, and upheld a denial of fees where a nonprofit organization was reprinting federal tax decisions in a newsletter sent to paying subscribers, Tax Analysts, 965 F.2d at 1093. Although Tax Analysts had a news interest, it simply sought “efficient, easy access” to information that was already public, id. at 1095, in order to make it available to its subscribers sooner, and the court concluded that such a subscriber organization did “not need the attorney’s fees incentive” to pursue litigation, id. at 1096. On the other hand, the court has long recognized that “news interests,” regardless of private incentive, generally “should not be considered commercial interests” for purposes of the second factor, Tax Analysts, 965 F.2d at 1096; Fenster v. Brown, 617 F.2d 740, 742 n. 4 (D.C.Cir.1979) (quoting S.Rep. No. 93-854, at 19), and that “a court would generally award fees if the complainant’s interest in the *1161 information sought was scholarly or journalistic or public-interest oriented, [unless] ... his interest was of a frivolous or purely commercial nature,” Fenster, 617 F.2d at 742 n. 4 (quoting S.Rep. No. 93-854, at 19); Tax Analysts, 965 F.2d at 1096.
Second, in finding that Davy’s interest was “purely commercial, the district court relied exclusively on the fact that Davy is the author of Let Justice Be Done, a book about the investigation by New Orleans District Attorney Jim Garrison and the trial of Clay Shaw for conspiracy to assassinate President Kennedy.” Yet this book was published in 1999, prior to the release of documents by the agency. This alone suffices to show that the district court abused its discretion. But even if the district court had been correct about the book, such scholarly interests are not “clearly commercial” under this circuit’s precedents. Davy’s FOIA requests for information related to the agency’s QKEN-CHANT and ZRCliff projects, which were based on his interest in the agency’s alleged involvement in the assassination, Davy I, 456 F.3d at 163, reflect more of a scholarly than a disqualifying commercial interest. The record indicates not only that Davy has also published magazine articles on the assassination but that some of the information released to him under FOIA had not previously been made public. There is no suggestion in the record that his requests were frivolous. In fact, Davy’s unchallenged declaration makes clear the substantive value of the released documents and the agency has not meaningfully argued otherwise even on appeal.
Additionally, Davy states in his sworn declarations that his “primary motivation was to obtain records which would shed light on [the Garrison] investigation, ... and present an accurate historical record regarding it,” and that his book made a “miniscule” amount of money. Davy Supp. Deck ¶ 4. Contrary to the district court’s speculation and the agency’s suggestion that because his book, out of print since 2004, was for sale on Amazon.com he must be commercially profiting, Davy stated that he received no money from such second-hand sales. Davy Supp. Deck ¶¶ 4-5. These are not the circumstances indicative of private, self-interested motivation or commercial pecuniary benefit that the court has recognized “will be sufficient to insure the vindication of the rights given in the FOIA.” Fenster, 617 F.2d at 743 n. 4 (quoting S.Rep. No. 93-854, at 19).
To the extent that Davy has a scholarly interest in publishing publicly valuable information in a book, his interest is at most “quasi-commercial,” Campbell v. U.S. Dep’t of Justice, 164 F.3d 20, 36 (D.C.Cir.1998). This alone is not disqualifying as nothing in the record would suggest that his private commercial interest outweighs his scholarly interest, much less the public value in providing him an incentive to ferret out and publish this information. See, e.g., Aronson v. U.S. Dep’t of Hous. & Urban Dev., 866 F.2d 1, 3 (1st Cir.1989). As the court observed in interpreting the FOIA provision providing for waiver or reduction of copying fees, 5 U.S.C. § 552(a)(4)(A)(iii), “Congress did not intend for scholars (or journalists and public interest groups) to forego compensation when acting within the scope of their professional roles.” Campbell, 164 F.3d at 35-36; see also Nat’l Treas. Employees Union v. Griffin, 811 F.2d 644, 649 (D.C.Cir.1987). Furthermore, Davy sought the information not for its republication value standing alone as in Tax Analysts, but in relation to a larger work addressing an historical issue of national importance.
Davy was thus much like a journalist who “gathers information of potential interest to a segment of the public, uses [his] *1162 editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience,” Tax Analysts, 965 F.2d at 1095, and as such is among those whom Congress intended to be favorably treated under FOIA’s fee provision, id. at 1096. He is at least the quintessential “average person,” Cuneo v. Rumsfeld, 553 F.2d 1360, 1363-64 (D.C.Cir.1977), abrogated on other grounds by Kay v. Ehrler, 499 U.S. 432, 438, 111 S.Ct. 1435, 113 L.Ed.2d 486 (1991), requesting information under FOIA about what the government was up to that he intends to share with the public as part of his scholarship or “news” gathering role rather than merely to promote his private commercial interests. For the reasons discussed and because the record provides no basis to doubt that his purpose in filing the FOIA request and pursuing litigation was to increase the public fund of knowledge about a matter of public concern, the district court abused its discretion in determinating that the second and third factors weighed against Davy.[3]
The fourth factor considers whether the agency’s opposition to disclosure “had a reasonable basis in law,” Tax Analysts, 965 F.2d at 1096, and whether the agency “had not been recalcitrant in its opposition to a valid claim or otherwise engaged in obdurate behavior,” LaSalle Extension, 627 F.2d at 486; see Fenster, 617 F.2d at 744. “If the Government’s position is correct as a matter of law, that will be dispositive. If the Government’s position is founded on a colorable basis in law, that will be weighed along with other relevant considerations in the entitlement calculus.” Chesapeake I, 11 F.3d at 216; see Cotton, 63 F.3d at 1117; Nationwide, 559 F.2d at 712 n. 34. The district court found that “there is no basis to conclude that the [a]gency unreasonably withheld these requested documents.” But this *1163 analysis mistakenly shifts the burden to the requester. The question is not whether Davy has affirmatively shown that the agency was unreasonable, but rather whether the agency has shown that it had any colorable or reasonable basis for not disclosing the material until after Davy filed suit.
The agency did not reach an agreement to disclose the requested documents until March 2001, after Davy filed his lawsuit and four months after he filed his second FOIA request. Davy observes on appeal that the agreement coincided with the filing date for meet-and-confer statements under Local Rule 16 of the district court, and that it took more than a year for the agency to process and release a moderate quantity of documents. That aside, although the agency invoked FOIA Exemptions 1 and 3 when it finally responded to Davy’s first FOIA request, it provided no such legal basis in response to Davy’s second FOIA request. Failing to explain the basis for deferring its response to his second request until after he filed suit is exactly the kind of behavior the fee provision was enacted to combat. For the agency to receive the benefit of the fourth factor it must present at least a “colorable basis in law” for its failure to respond to Davy’s second request, and it has not done so. See Nationwide, 559 F.2d at 712 n. 34. It is not enough to say that “once the [ajgency faced a justiciable FOIA claim, it offered no resistance,” Appellee’s Br. at 19, because the agency did not disclose the documents until after Davy had pursued litigation, including filing a cross-motion for summary judgment and negotiating a release schedule. Even on appeal the agency does not suggest that the “information disclosed after initial resistance was nonetheless exempt from the FOIA,” or that “it had a reasonable basis in law for resisting disclosure.” Nationwide, 559 F.2d at 712 n. 34. If the government could defeat an award of fees by citing a lack of resistance after the requester files a lawsuit to obtain requested documents, then it could force plaintiffs to bear the costs of litigation. Absent evidence that the agency had a reasonable basis for failing to respond to Davy’s second request, the district court abused its discretion in determining that the fourth factor weighed in the agency’s favor.
Accordingly, because the record reflects that he is the type of requester Congress contemplated when it sought “to lower the ‘often ... insurmountable barriers presented by court costs and attorney fees to the average person requesting information under the FOIA,’ ” Tax Analysts, 965 F.2d at 1095 (quoting Cuneo, 553 F.2d at 1363-64), and because no factor weighs in the agency’s fayor, a balancing of the factors can only support the conclusion that Davy is entitled to an award of attorney’s fees. Accordingly, we reverse and remand the case only for the district court to enter an appropriate order awarding fees and costs as to all matters on which Davy prevailed.

. Under FOIA, ‘‘[t]he court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed.” 5 U.S.C. § 552(a)(4)(E)(i).

. See S.Rep. No. 93-854, at 17-20 (1974), reprinted in H. Comm, on Gov’t Operations, S. Comm, on Judiciary, 94th Cong., Freedom of Information Act and Amendments of 1974, Source Book II 151, 169-72 (1975).

. Our dissenting colleague inappropriately shifts the focus from the request's topic and purpose to the specific content of the released documents. The dissent ignores both Davy's four-page sworn description of the newly released information and its significance to scholars in understanding events relating to the assassination of President Kennedy, and the fact that the government never challenged his description of the value of this information. Even on appeal the agency never takes issue with the point-by-point substantive analysis Davy presented, and instead asserts only that to be entitled to fees Davy must show that "his current work [is] likely to have an impact comparable to a widely circulated journal” or "significantly advances the public understanding of an issue important to ‘making vital political decisions,’ per Fenster," Appellee's Br. at 13. Putting aside the fact that the court does not typically rehabilitate such an "asserted but unanalyzed argument,” Duncan’s Point Lot Owners Ass’n v. FERC, 522 F.3d 371, 377 (D.C.Cir.2008), the agency points to no authority nor rationale that conditions FOIA fee awards on circulation data. Indeed, such a requirement would be counterproductive, both because many requesters would be unable to provide publication data in a timely filed fee request, and because shifting to the plaintiff the risk that the disclosures will be unilluminating defeats the purpose of the fee provision. New people in Davy’s situation, for example, would stake their financial resources on litigation when they can know nothing about the documents or their contents prior to their release. It would also be inconsistent with congressional intent to disqualify plaintiffs who obtain information that, while arguably not of immediate public interest, nevertheless enables further research ultimately of great value and interest, such as here the public understanding of a Presidential assassination. Understandably the government does not suggest that Davy’s motivation for requesting the documents is suspect, as it seems unlikely that he would, as the dissent speculates, allow the information he has described as new and significant to "gather[] dust in some corner of his closet,” Dis. Op. at 1164, after pursuing its release for six years. Moreover, the dissent appears to ignore, id., what long standing precedent makes clear, see Nationwide, 559 F.2d at 715, quoted supra — any fee burden to be borne by the public is a result of the government’s conduct, not the plaintiff’s.