# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued October 16, 2020          Decided March 9, 2021

No. 19-5310

MARGARET B. KWOKA,
APPELLANT

v.

INTERNAL REVENUE SERVICE,
APPELLEE

---

Appeal from the United States District Court
for the District of Columbia
(No. 1:17-cv-01157)

---

*Adina H. Rosenbaum* argued the cause for appellant. With her on the briefs were *Patrick D. Llewellyn* and *Allison M. Zieve*.

*Kathleen E. Lyon*, Attorney, U.S. Department of Justice, argued the cause for appellee. With her on the brief was *Michael J. Haungs*, Attorney.

Before: TATEL, MILLETT, and KATSAS, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* TATEL.

TATEL, *Circuit Judge*: This case presents a recurring question in our court: under what circumstances is a prevailing

plaintiff in a Freedom of Information Act (FOIA) case—here a law professor seeking information from the Internal Revenue Service—entitled to an award of attorney's fees? The district court denied the professor's request for fees. For the reasons set forth below, we vacate and remand for further proceedings consistent with this opinion.

**I.**

This dispute began with a FOIA request about FOIA requests. Margaret Kwoka, a law professor at the University of Denver, studies federal agency administration of FOIA. Kwoka submitted a FOIA request for nine categories of information about each FOIA request received by the IRS in Fiscal Year 2015. FOIA Request at 1, Joint Appendix (J.A.) 23. Although the IRS had already produced a publicly available "log" containing some data about each of its FOIA requests, Kwoka sought "additional fields that are not included in [the] version that is published" on the IRS's website. *Id.* Relevant to this appeal, she sought (1) the names of all "third-party" requesters, i.e., those who requested information about another person, and (2) the organizational affiliations of all requesters who provided one. Kwoka needed this information "to examine whether the IRS is administering its FOIA obligations in a manner that is efficient and effective given the nature of frequent requesters." Kwoka Decl. ¶ 8, J.A. 79. She plans to include her analysis of the expanded FOIA logs in a forthcoming book, as well as in presentations and articles.

The IRS granted most of Kwoka's request but denied it with respect to the two categories of information described above. It relied on Exemption 3, which excludes matters "specifically exempted from disclosure by statute," and on Exemption 6, which excludes disclosures that "would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(3), (6); *see* IRS FOIA Response at 2, J.A. 36.

After exhausting her administrative remedies, Kwoka filed suit in the district court, and the parties cross-moved for summary judgment.

The district court granted each party's summary judgment motion in part, rejecting the IRS's blanket withholding of the two categories of information, but allowing for the possibility of limited redactions on a case-by-case basis. *Kwoka v. IRS*, No. 17-cv-1157, 2018 WL 4681000 (D.D.C. Sept. 28, 2018). Defending its invocation of Exemption 3, the IRS relied on section 6103 of the Internal Revenue Code, which prohibits the disclosure of "return information," including "a taxpayer's identity" and "whether the taxpayer's return was, is being, or will be examined or subject to other investigation or processing." I.R.C. § 6103(a), (b)(2)(A). According to the IRS, knowledge of a requester's identity could allow someone to infer the identity of the taxpayer targeted by a request. The district court was unconvinced, explaining that "the IRS's conclusion does not follow from its premises." *Kwoka*, 2018 WL 4681000, at *2. Releasing the two categories of information would not lead to the disclosure of return information because "[n]either the log nor the information Kwoka requests generally reveals the *target* of a FOIA request—i.e., the person whose tax records the requester is seeking." *Id.* "Even armed with the information she requests and the publicly accessible FOIA log, in most cases Kwoka could not know with any certainty the identity of particular taxpayers." *Id.* Even for many of the examples raised by the IRS—such as a request targeting a company made by a shareholder or a request targeting a recently deceased taxpayer made by a relative—"Kwoka would have no way of knowing" who the target of the request was based on the information she seeks. *Id.* Although the district court agreed with the IRS that redactions could be warranted in some scenarios, it concluded that the Service would have to make those redactions on a case-

by-case basis. *See id.* at *3. "Because of the logical problems with the IRS's argument," the district court explained, the Service had failed to justify blanket withholding under Exemption 3. *Id.*

The district court rejected the IRS's Exemption 6 arguments on similar grounds. "[I]n most cases, revealing the organizational affiliations of first-party requesters and the names and organizational affiliations of third-party requesters would not reveal the target of the request." *Id.* (emphasis omitted). Moreover, the FOIA requesters themselves lack a sufficient privacy interest to justify withholding, since they "'freely and voluntarily address[] their inquiries to the IRS, without a hint of expectation that the nature and origin of their correspondence w[ill] be kept confidential.'" *Id.* (alterations in original) (quoting *Stauss v. IRS*, 516 F. Supp. 1218, 1223 (D.D.C. 1981)). Again, the district court found that although some redaction may be warranted on a case-by-case basis, "the existence of a few possible exceptions does not justify the IRS's blanket withholding here." *Id.* at *4.

The IRS's other arguments in favor of blanket withholding fared no better. The district court rejected the Service's contention that Kwoka's request would require the creation of new records, since "the IRS has admitted it has the information Kwoka seeks," and simply redacting parts of a document does not transform it into a new record. *Id.* (citing *Yeager v. Drug Enforcement Administration*, 678 F.2d 315, 321 (D.C. Cir. 1982)). Finally, the district court disagreed with the IRS that the disclosable information was not "reasonably segregable." *Id.* It found that "redacting individual names and organizational affiliations of exempt entries . . . would not render the remaining record unintelligible," and that directing the IRS to comply with Kwoka's request would not impose an unreasonable burden. *Id.* at *4–5. "[W]here the IRS already has

all the requested records in its possession, the Court will not allow it to withhold the documents wholesale simply because it will (potentially) take 2,200 hours to review them for redactions." *Id.* at \*5. The IRS ultimately produced the requested information for over 12,000 FOIA requests, redacting (without objection from Kwoka) only 147 third-party requester names and 220 organizational affiliations.

Setting the stage for the issue now before us, Kwoka then filed a motion for fees pursuant to section 552(a)(4)(E)(i), which provides that a district court "may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed." 5 U.S.C. § 552(a)(4)(E)(i). The district court denied the motion, and Kwoka now appeals. *See Kwoka v. IRS* (*Fees Minute Order*), No. 17-cv-1157 (D.D.C. Oct. 25, 2019).

## II.

FOIA's fee recovery provision fulfills two objectives. First, it serves "to encourage Freedom of Information Act suits that benefit the public interest" when "sufficient private interest in the requested information" is lacking. *LaSalle Extension University v. FTC*, 627 F.2d 481, 484 (D.C. Cir. 1980) (per curiam). "A grudging application of this provision . . . would dissuade those who have been denied information from invoking their right to judicial review . . . ." *Nationwide Building Maintenance, Inc. v. Sampson*, 559 F.2d 704, 715 (D.C. Cir. 1977). Second, it provides "compensation for enduring an agency's unreasonable obduracy in refusing to comply with the Freedom of Information Act's requirements." *LaSalle Extension University*, 627 F.2d at 484. Moreover, an allowance for fees "remove[s] the incentive for administrative resistance to disclosure requests based not on the merits of exemption claims, but on the knowledge that many FOIA

plaintiffs do not have the financial resources or economic incentives to pursue their requests through expensive litigation." *Nationwide Building Maintenance, Inc.*, 559 F.2d at 711.

In evaluating a fee petition, the district court assesses whether the plaintiff "substantially prevailed" within the meaning of the statute. 5 U.S.C. § 552(a)(4)(E)(i). Here, the district court found Kwoka had done so, a conclusion the IRS does not contest. But that is not enough. Because the statute provides that an eligible party "may" receive fees, the district court must also decide whether the plaintiff is "entitled" to a fee award. *Edmonds v. FBI*, 417 F.3d 1319, 1327 (D.C. Cir. 2005).

Drawing from legislative history, our court has devised a four-factor test to guide district courts in determining whether a plaintiff is "entitled" to fees. That test "looks to (1) the public benefit derived from the case; (2) the commercial benefit to the plaintiff; (3) the nature of the plaintiff's interest in the records; and (4) the reasonableness of the agency's withholding of the requested documents." *Morley v. CIA* (*Morley II*), 810 F.3d 841, 842 (D.C. Cir. 2016) (internal quotation marks omitted). "No one factor is dispositive," except that "the court will not assess fees when the agency has demonstrated that it had a lawful right to withhold disclosure." *Davy v. CIA*, 550 F.3d 1155, 1159 (D.C. Cir. 2008). We review a district court's entitlement determination for abuse of discretion. *Morley v. CIA* (*Morley III*), 894 F.3d 389, 391 (D.C. Cir. 2018) (per curiam). "In other words, was the district court's decision on attorney's fees at least within the zone of reasonableness, even if we might disagree with the decision?" *Id.*

In this case, the district court weighed the first factor in Kwoka's favor. Although the parties spar over the proper

magnitude the district court gave or should have given to that factor, the IRS does not argue that the court abused its discretion by finding "some benefit to the public" from the lawsuit. *Fees Minute Order* (internal quotation marks omitted).

With respect to the second and third factors, the district court stated that Kwoka will "derive some commercial benefit from the records, and the nature of [her] interest in the records is both professional and pecuniary." *Id.* (alteration in original) (internal quotation marks omitted). Both Kwoka and the IRS interpret this statement as weighing the two factors against Kwoka. The district court went on to weigh the fourth factor against Kwoka, explaining that "the government's withholding of the records had a reasonable basis in law as an *ex ante* matter." *Id.* (internal quotation marks omitted). Then, "[t]aking into account all of the circumstances of this case and weighing the relevant factors," the district court denied Kwoka's fee petition. *Id.* On appeal, Kwoka contends that the district court erred with respect to the second, third, and fourth factors.

We agree with Kwoka that the second and third factors— "commercial benefit" and "plaintiff's interest"—support a fee award. "[C]losely related and often considered together," *Tax Analysts v. U.S. Department of Justice*, 965 F.2d 1092, 1095 (D.C. Cir. 1992), the two factors "assess whether a plaintiff has sufficient private incentive to seek disclosure without attorney's fees," *Davy*, 550 F.3d at 1160 (internal quotation marks omitted).

In *Davy v. CIA*, we explained how factors two and three apply to scholars and journalists. "Congress did not intend for scholars (or journalists and public interest groups) to forgo compensation when acting within the scope of their professional roles." *Id.* at 1161 (internal quotation marks omitted). Individuals like scholars and journalists who

"gather[] information of potential interest to a segment of the public, use[] [their] editorial skills to turn the raw materials into a distinct work, and distribute[] that work to an audience" are "among those whom Congress intended to be favorably treated under FOIA's fee provision." *Id.* at 1161–62 (internal quotation marks omitted); *see also id.* at 1165 (Tatel, J., concurring) ("Always searching for information that the public will want to consume, journalists must surely be thought of as pursuing records in the public interest.").

As we explained in *Davy*, then, "news interests, regardless of private incentive, generally should not be considered commercial interests," and the second and third factors "generally" should weigh in favor of scholars and journalists unless their interest "was of a frivolous or purely commercial nature." *Id.* at 1160–61 (majority opinion) (alterations omitted) (internal quotation marks omitted). These two factors should therefore generally aid scholars and journalists even if, in some cases, they do not weigh strongly in a plaintiff's favor and therefore ultimately "do little to advance [their] position" when weighing all four factors. *McKinley v. Federal Housing Finance Agency*, 739 F.3d 707, 712 (D.C. Cir. 2014) (emphasis omitted) (internal quotation marks omitted).

Kwoka undoubtedly has a serious, scholarly interest in how federal agencies administer FOIA. She has published articles about FOIA in the *Yale* and *Duke Law Journals*, *see* Margaret B. Kwoka, *First-Person FOIA*, 127 Yale L.J. 2204 (2018); Margaret B. Kwoka, *FOIA, Inc.*, 65 Duke L.J. 1361 (2016), and her work has been cited by multiple circuit courts, *see NLRB v. New Vista Nursing & Rehabilitation*, 870 F.3d 113, 133 n.12 (3d Cir. 2017); *Moffat v. U.S. Department of Justice*, 716 F.3d 244, 254 n.10 (1st Cir. 2013), as well as our own district court, *see National Security Counselors v. CIA*, 960 F. Supp. 2d 101, 204 n.77 (D.D.C. 2013). Additionally, she

has either testified about FOIA or presented her research to the Senate Judiciary Committee, the Securities and Exchange Commission's FOIA Office, and the National Archives and Records Administration's FOIA Advisory Committee, while also previously serving on the latter committee as Co-Chair of the Proactive Disclosures Subcommittee. And especially relevant here, she says that she will soon publish a book with Cambridge University Press featuring her analysis of the very information she obtained in this case.

Moreover, the IRS does not contend that Kwoka's interest was "frivolous" or "purely commercial." *Davy*, 550 F.3d at 1161 (internal quotation marks omitted). In fact, Kwoka's use of the information she obtained through these requests to research trends in FOIA requests and propose improvements to agency administration represents an important type of "public-interest oriented" scholarly endeavor that FOIA's fee provision exists to encourage. *Id.* (internal quotation marks omitted). Although Kwoka plans to publish some of her analysis in a forthcoming book, *Davy* makes clear that the "mere intention to publish a book does not necessarily mean that the nature of the plaintiff's interest is purely commercial." *Id.* at 1160 (internal quotation marks omitted). Indeed, scholarly interest, "regardless of private incentive, generally should not be considered commercial." *Id.* (internal quotation marks omitted). In any event, a scholarly book on FOIA is unlikely to become a bestseller. As in *Davy*, "nothing in the record would suggest that [Kwoka's] private commercial interest outweighs [her] scholarly interest, much less the public value in providing [her] an incentive to ferret out and publish this information." *Id.* at 1161. Because Kwoka lacks "sufficient private incentive to seek disclosure without attorney's fees," the second and third factors weigh in her favor. *Id.* at 1160 (internal quotation marks omitted).

The fourth factor "considers whether the agency's opposition to disclosure had a reasonable basis in law and whether the agency had not been recalcitrant in its opposition to a valid claim or otherwise engaged in obdurate behavior." *Id.* at 1162 (internal quotation marks and citations omitted). To benefit from this factor, the agency must show that it had a "colorable or reasonable basis for not disclosing the material." *Id.* at 1163.

In the district court, the IRS argued that it had denied Kwoka's request because it reasonably believed (1) that the information she sought "was exempt in full under FOIA exemption 3 in conjunction with Internal Revenue Code . . . [section] 6103," Smith Decl. ¶ 16, *Kwoka v. IRS*, No. 17-cv-1157 (D.D.C. Oct. 25, 2019), ECF No. 26-1; and (2) "that reviewing and redacting the files of each of the approximate[ly] 12,000 requests" would impose "an unreasonable burden," Opposition to Fees at 11, *Kwoka v. IRS*, No. 17-cv-1157 (D.D.C. Oct. 25, 2019), ECF No. 27-1. The district court agreed with the first argument. Observing that the IRS's "principal motivation in withholding the records was to comply with its statutory obligation to avoid improper disclosure of third-party taxpayer return information," it stated that this "concern was not unfounded at the outset of the litigation." *Fees Minute Order*. According to the district court, moreover, its "authorization of redactions" demonstrates "that there remains some cause for legitimate concern." *Id.*

On this issue, our review is especially deferential. "The question for us is whether the District Court reasonably (even if incorrectly) concluded that the agency reasonably (even if incorrectly) withheld documents." *Morley III*, 894 F.3d at 393. But even this "double dose of deference," *id.*, cannot save the district court's conclusion with respect to section 6103.

To begin with, the IRS failed to give any logical explanation as to how someone could reliably infer taxpayer identities from the vast majority of the information Kwoka sought. As the district court pointed out, even many of the hypotheticals posed by the IRS made no sense on their own terms. For example, the IRS argued that if a corporate shareholder requested examination files about the company for which he owned shares, someone could infer the protected identity of the company targeted by the request from the requester's publicly-known ownership. But as the district court explained, this "conclusion does not follow," because "the 'corporate shareholder' *might* be requesting information about the corporation, but he might also be requesting information about any number of other organizations (or individuals)," and "Kwoka would have no way of knowing." *Kwoka*, 2018 WL 4681000, at *2. Moreover, one of the IRS's own summary judgment declarations admitted that "some" of Kwoka's "requests for non-tax records likely do not implicate significant privacy interests" and are therefore "non-exempt." Rowe Decl. ¶ 17, *Kwoka v. IRS*, No. 17-cv-1157 (D.D.C. Sept. 28, 2018), ECF No. 9-3; *see also id.* ¶ 20 ("Disclosing the requester names and organizational affiliations with respect to only those requests for non-tax records would not reveal tax information that is protected under I.R.C. § 6103."). From the beginning of this litigation, then, the IRS knew that at least some of the information Kwoka sought was not subject to section 6103. Lacking basis in either logic or fact, the IRS's argument that section 6103 exempted all of the requested information was plainly unreasonable.

This, however, does not end the matter, as the district court never addressed the IRS's other argument—that at the time of Kwoka's initial request, it reasonably believed that segregating the exempt and non-exempt materials would impose an unreasonable burden. *See* 5 U.S.C. § 552(a)(8)(A)(ii)(II)

(Agencies must "take reasonable steps necessary to segregate and release non[-]exempt information[.]"). To be sure, at summary judgment, the district court rejected the argument on the merits. Indeed, it doubted that time spent processing records for redactions, as opposed to searching for the records in the first place, could even qualify as an unreasonable burden, observing that "the IRS has already located the responsive records and thus need not conduct any additional search; the only issue is whether it must spend the time to review those records to make redactions." *Kwoka*, 2018 WL 4681000, at \*5. The district court went on to explain that "[e]ven if reviewing an already-identified set of documents qualifies as a search, [other] courts in this Circuit have required production of records much more voluminous than the records requested here." *Id.* (citing *Public Citizen v. Department of Education*, 292 F. Supp. 2d 1, 6 (D.D.C. 2003)).

The district court, however, never answered the question critical to Kwoka's fee request. Even though it found at the summary judgment stage that processing the records for redactions imposed no unreasonable burden, the question at the fee stage is whether the IRS "had a reasonable basis in law" when it "initially" concluded otherwise. *Morley III*, 894 F.3d at 392 (internal quotation marks omitted). Accordingly, because our role is to "review the district court's attorney's fees determination only for abuse of discretion," *id.* at 391, we shall follow our court's consistent practice and remand to the district court to evaluate the reasonableness of the IRS's burden argument in the first instance and then to re-balance the four factors in view of our conclusion that factors two and three weigh in Kwoka's favor. *See Morley II*, 810 F.3d at 845 (vacating a FOIA fees decision and remanding for reconsideration of the factors); *Davy v. CIA*, 456 F.3d 162, 167 (D.C. Cir. 2006) ("If the district court fails to articulate the

basis for its attorney fee decision, we believe remand for adequate explanation of its reasoning is in order.").

## III.

For the foregoing reasons, we vacate the district court's denial of Kwoka's fee motion and remand for further proceedings consistent with this opinion.

*So ordered.*