# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued November 6, 2015   Decided January 21, 2016

No. 14-5230

JEFFERSON MORLEY,
APPELLANT

v.

CENTRAL INTELLIGENCE AGENCY,
APPELLEE

---

Appeal from the United States District Court
for the District of Columbia
(No. 1:03-cv-02545)

---

*James H. Lesar* argued the cause and filed the briefs for appellant.

*Benton Peterson*, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief were *Vincent H. Cohen, Jr.*, Acting U.S. Attorney, and *R. Craig Lawrence*, Assistant U.S. Attorney.

Before: SRINIVASAN, *Circuit Judge*, and WILLIAMS and GINSBURG, *Senior Circuit Judges*.

Opinion for the Court filed by *Senior Circuit Judge* WILLIAMS.

WILLIAMS, *Senior Circuit Judge*: Jefferson Morley appeals for the second time from the district court's denial of his request for attorney's fees and costs under the Freedom of Information Act ("FOIA"). Morley argues that he is entitled to a fee award under the familiar four-factor standard that looks to "(1) the public benefit derived from the case; (2) the commercial benefit to the plaintiff; (3) the nature of the plaintiff's interest in the records; and (4) the reasonableness of the agency's withholding of the requested documents." *Davy v. CIA*, 550 F.3d 1155, 1159 (D.C. Cir. 2008) (citations omitted). Because the district court improperly analyzed the public-benefit factor by assessing the public value of the information *received* rather than "the potential public value of the information sought," *id.* (citations omitted), we must vacate and remand again.

* * *

Morley is a journalist and news editor who has written about the assassination of President John F. Kennedy. In 2003 he submitted a FOIA request to the Central Intelligence Agency for all records related to CIA officer George E. Joannides. Morley believed that information on Joannides could shed new light on President Kennedy's assassination because Joannides had served as the CIA case officer for *Directorio Revolucionario Estudantil* ("DRE"), one of the Cuba-focused organizations with which Lee Harvey Oswald was in contact in the months before the assassination. Receiving only a communication from the CIA that records on President Kennedy's assassination had been sent to the National Archives and Records Administration, Morley filed suit. The ensuing litigation spanned over a decade and led to the production of several hundred documents, a subset of which are in fact publicly available in the Archives. Morley contends that some of the documents turned over—a couple of travel records and a photograph and citation relating to a

career medal once received by Joannides—shed some light on President Kennedy's assassination, but the value of these documents is at best unclear.

In 2010 Morley sought attorney's fees as a substantially prevailing party. See 5 U.S.C. § 552(a)(4)(E)(i). The district court denied the fee request. *Morley v. CIA*, 828 F. Supp. 2d 257, 265-66 (D.D.C. 2011). While acknowledging that "the Kennedy assassination is surely a matter of public interest," *id*. at 262 (citation omitted), the district court concluded that the public-benefit factor weighed strongly against a fee award because the actual documents produced by the CIA provided little if any public benefit, see *id*. at 262-64. After analyzing the remaining three factors, the district court concluded that Morley was not entitled to fees. *Id*. at 264-66.

This court vacated and remanded because the district court had failed to consider the analysis of the public-benefit factor in *Davy*, a decision that also concerned a FOIA request for documents related to President Kennedy's assassination. *Morley v. CIA*, 719 F.3d 689, 690 (D.C. Cir. 2013).

On remand, the district court again denied fees, explaining that *Davy* "d[id] not alter [its] original conclusion that 'this litigation has yielded little, if any, public *benefit*— certainly an insufficient amount to support an award of attorney's fees.'" *Morley v. CIA*, 59 F. Supp. 3d 151, 155 (D.D.C. 2014) (emphasis in original) (quoting *Morley*, 828 F. Supp. 2d at 262). While noting the *Davy* court's conclusion that the requested information served a public benefit because of its alleged nexus to the Kennedy assassination, the district court rejected the idea that *Davy* had "create[d] a category of records that automatically satisfy the [public-benefit] factor based on a plaintiff's claims of a relationship to [President Kennedy's] assassination." *Id*. (As developed below, we agree with the point that a plaintiff's "claims" of a

relationship to the assassination aren't enough to establish a public benefit.) Analyzing the particular documents that Morley received, the court concluded that "this litigation has benefited the public only slightly, if at all." *Id*. at 158. The released documents either were previously publicly available, *id*. at 156, or "shed very little, if any, light on Joannides's involvement in the events surrounding the Kennedy assassination," *id*. at 158.

\* \* \*

The district court erred in concluding that the merits case had not yielded a public benefit. We agree that the released documents appear to reveal little, if anything, about President Kennedy's assassination. Morley contends that the released travel records indicate that Joannides may have been in New Orleans at the time that Warren Commission investigators were interviewing DRE members about their contacts with Oswald, and that the career medal reflects the CIA's approval of Joannides's conduct as its case officer for the DRE and as liaison between the CIA and the House Select Committee on Assassinations. The plausibility and value of these inferences are at best questionable, but are ultimately of little relevance as *Davy* required the court to assess "the potential public value of the information sought," *Davy*, 550 F.3d at 1159 (citations omitted), not the public value of the information received. The purpose of the fee provision is "to remove the incentive for administrative resistance to disclosure requests based not on the merits of exemption claims, but on the knowledge that many FOIA plaintiffs do not have the financial resources or economic incentives to pursue their requests through expensive litigation." *Id*. at 1158 (quoting *Nationwide Bldg. Maint., Inc. v. Sampson*, 559 F.2d 704, 711 (D.C. Cir. 1977)). "[S]hifting to the plaintiff the risk that the disclosures will be unilluminating" would defeat this purpose because "[f]ew people . . . would stake their financial

resources on litigation when they can know nothing about the documents or their contents prior to their release." *Id*. at 1162 n.3; see also *id*. at 1164-65 (Tatel, J., concurring).

To be sure, *Davy* notes that assessing the public benefit also requires considering "the effect of the litigation," and while the court's analysis focuses on "[t]he information Davy requested," there is some discussion of the actual documents released. *Id*. at 1159 (majority opinion). But "the effect of the litigation" inquiry is properly understood as asking simply whether the litigation has caused the release of requested documents, without which the requester cannot be said to have substantially prevailed. See *id*. (suggesting that assessing "the value of the litigation" "presents a variation on" the question whether the plaintiff has "substantially prevail[ed]"). Lest there be any uncertainty, we clarify that the public-benefit factor requires an *ex ante* assessment of the potential public value of the information requested, with little or no regard to whether any documents supplied prove to advance the public interest. We can imagine a rare case where the research harvest seemed to vindicate an otherwise quite implausible request. But if it's plausible *ex ante* that a request has a decent chance of yielding a public benefit, the public-benefit analysis ends there.

Of course a bare allegation that a request bears a nexus to a matter of public concern does not automatically mean that a public benefit is present. To have "potential public value," *Davy*, 550 F.3d at 1159, the request must have at least a modest probability of generating useful new information about a matter of public concern. The higher this probability and the more valuable the new information that could be generated, the more potential public value a request has. The nature of the subject that the request seeks to illuminate is obviously important. Where that subject is the Kennedy assassination—an event with few rivals in national trauma and

in the array of passionately held conflicting explanations—showing potential public value is relatively easy. This of course does not mean that a requester's mere *claim* of a relationship to the assassination *ipso facto* satisfies the public interest criterion. Cf. *Morley*, 59 F. Supp. 3d at 155.

Morley's request had potential public value. He has proffered—and the CIA has not disputed—that Joannides served as the CIA case officer for a Cuban group, the DRE, with whose officers Oswald was in contact prior to the assassination. Travel records showing a very close match between Joannides's and Oswald's times in New Orleans might, for example, have (marginally) supported one of the hypotheses swirling around the assassination. In addition, this court has previously determined that Morley's request sought information "central" to an intelligence committee's inquiry into the performance of the CIA and other federal agencies in investigating the assassination. *Morley v. CIA*, 508 F.3d 1108, 1118 (D.C. Cir. 2007). Under these circumstances, there was at least a modest probability that Morley's request would generate information relevant to the assassination or later investigations.

The district court suggested that Morley is not entitled to fees incurred in connection with documents that were available to him (and the public generally) in the Archives. *Morley*, 59 F. Supp. 3d at 156. The district court's basic point was correct: whether documents are already in the public domain is significant because it undermines any claim that the requester's use of FOIA had provided public access to the documents. See *Tax Analysts v. U.S. Dep't of Justice*, 965 F.2d 1092, 1094-95 (D.C. Cir. 1992). But, unlike the requester in *Tax Analysts*, who sought publicly available tax decisions, Morley had no reason to believe that all records pertaining to Joannides would be available. Moreover, at oral

argument Morley's counsel claimed that extracting documents of this sort from the Archives is a laborious and unreliable process—and that some documents in the Archives cannot be electronically located because of missing record identification forms, which record information about each document for input into an electronic database. The Archives website does not clearly confirm or contradict this claim, but does indicate that "[n]ot all the material found in the Collection is indexed in the database." JFK Assassination Records Collection Reference System, https://www.archives.gov/research/jfk/search.html#reference (last visited Jan. 4, 2016).

Before denying any fees on the ground that some of the documents were available in the Archives, the district court should consider (1) whether fees incurred in connection with such documents are segregable and, if so, (2) whether the difficulties recited above nonetheless militate against denial of fees for such documents.

Following the prior remand on the fees issue, the district court declined to reevaluate any factors other than public benefit, or to rebalance the factors, despite this court's suggestion in *Davy* that the first three factors are all addressed to the distinction "between requesters who seek documents for public informational purposes and those who seek documents for private advantage." *Davy*, 550 F.3d at 1160. On remand, the district court should consider the remaining factors and the overall balance afresh.

\* \* \*

The judgment of the district court is vacated and the case is

*Remanded*.