# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued March 19, 2018         Decided July 9, 2018

No. 17-5114

JEFFERSON MORLEY,
APPELLANT

v.

CENTRAL INTELLIGENCE AGENCY,
APPELLEE

---

Appeal from the United States District Court
for the District of Columbia
(No. 1:03-cv-02545)

---

*James H. Lesar* argued the cause and filed the briefs for appellant.

*Benton G. Peterson*, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief were *Jessie K. Liu*, U.S. Attorney, and *R. Craig Lawrence*, Assistant U.S. Attorney.

Before: HENDERSON, KAVANAUGH, and KATSAS, *Circuit Judges*.

Opinion for the Court filed PER CURIAM.

Dissenting opinion filed by *Circuit Judge* HENDERSON.

PER CURIAM: This FOIA case has dragged on for a staggering 15 years. The litigation over attorney's fees alone has taken 8 years. It is time to bring the case to an end.

The sole question at this point is whether plaintiff Morley is entitled to attorney's fees under the FOIA attorney's fees statute. In 2003, Morley submitted a FOIA request to the CIA. Morley sought records related to former CIA Officer George Joannides. Morley stated that the records about Joannides would "shed new light on" the assassination of President Kennedy. After several years of litigation, the CIA supplied Morley with some responsive records. In 2010, Morley requested attorney's fees from the Government. Under FOIA, the district court "*may* assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed." 5 U.S.C. § 552(a)(4)(E)(i) (emphasis added).

Because the FOIA attorney's fees statute provides that the district court "may" award fees to a prevailing plaintiff – and not "must" or "shall" award fees – courts have struggled for years to determine when attorney's fees should be awarded to a prevailing FOIA plaintiff. This Court has said that district courts should consider four rather amorphous factors: (i) the public benefit from the case; (ii) the commercial benefit to the plaintiff; (iii) the nature of the plaintiff's interest in the records; and (iv) the reasonableness of the agency's withholding of the requested documents. *See Davy v. CIA*, 550 F.3d 1155, 1159 (D.C. Cir. 2008). We have left the balancing of the factors to the discretion of the district court.

How does the court of appeals review a district court's attorney's fees decision under the FOIA statute and the judicially created four-factor test? Deferentially. We review

the district court's attorney's fees determination only for abuse of discretion.  In other words, was the district court's decision on attorney's fees at least within the zone of reasonableness, even if we might disagree with the decision?  We apply that deferential standard, we have said, because the district court is "better suited to make the initial determination" about whether a litigant is entitled to attorney's fees, given that the district court closely monitored the litigation.  *Davy v. CIA*, 456 F.3d 162, 167 (D.C. Cir. 2006).

It is important to unpack what abuse-of-discretion review means in the context of FOIA attorney's fees litigation.  First, we review for abuse of discretion the district court's analysis of each of the four individual factors (to the extent the appellant raises such an argument on appeal).  Second, we review for abuse of discretion the district court's balancing of the four factors (to the extent the appellant raises such an argument on appeal).  With respect to that latter inquiry, when all four factors point in favor of the plaintiff or in favor of the defendant, the attorney's fees analysis is ordinarily straightforward.  But when the four factors point in different directions, the district court has very broad discretion in deciding how to balance those factors and whether to award attorney's fees.  Indeed, if the four factors point in different directions, assuming no abuse of discretion in the district court's analysis of the individual factors, it will be the rare case when we can reverse a district court's balancing of the four factors and its ultimate decision to award or deny attorney's fees.  *See Tax Analysts v. Department of Justice*, 965 F.2d 1092, 1094, 1096 (D.C. Cir. 1992); *LaSalle Extension University v. FTC*, 627 F.2d 481, 484 (D.C. Cir. 1980).

This is the third time that this Court has considered whether Morley is entitled to attorney's fees.  In each of the first two appeals, we remanded the case back to the District

Court for additional analysis. In its most recent decision, the District Court denied fees.

One can debate whether the District Court's decision denying attorney's fees was correct. But the question for us is not whether the District Court's decision was correct, but rather whether the District Court's decision was at least reasonable. Applying the deferential abuse-of-discretion standard, we conclude that the District Court's decision was reasonable, and we therefore affirm the judgment of the District Court denying attorney's fees.

\* \* \*

Applying this Circuit's four-factor inquiry, the District Court concluded that the first factor favored Morley because there was at least a small public benefit from the information sought by Morley. The District Court concluded that factors two and three – relating to the plaintiff's possible commercial benefit and commercial interest – did not count against Morley. *See Morley v. CIA*, 245 F. Supp. 3d 74, 78 n.2 (D.D.C. 2017). In short, as Morley's counsel acknowledged at oral argument, the District Court "found that three of the four factors favored Morley." Tr. of Oral Arg. at 4.

But Morley contends that the District Court's analysis of those three factors afforded them insufficient weight and did not square with our prior decision in this case. We disagree.

In our prior decision, we held that factor one favored Morley, but only to the extent that some of the records sought by Morley might have "marginally" supported one of Morley's theories, meaning that there was "at least a modest probability" of generating useful information. *Morley v. CIA*, 810 F.3d 841, 844-45 (D.C. Cir. 2016). Our decision did not precisely

quantify the public benefit. But our use of the word "marginally" suggested that the public benefit might be small. The District Court's assessment on remand that a public benefit existed, but was "small," was entirely consistent with our prior decision. *Morley*, 245 F. Supp. 3d at 77. Moreover, given Morley's disjointed explanations in this case, the District Court did not abuse its discretion in concluding that the public benefit here was small.

On factors two and three, the District Court likewise did not abuse its discretion. In similar cases involving non-commercial requesters, we have upheld a district court's analysis of factors two and three when the district court stated (as the District Court did here) that those factors at least did not count against an award of attorney's fees. *See McKinley v. FHFA*, 739 F.3d 707, 712 (D.C. Cir. 2014); *cf. Davy v. CIA*, 550 F.3d 1155, 1160 (D.C. Cir. 2008).

We therefore turn to the fourth factor, which is the heart of this case. That factor evaluates why the agency initially withheld the records. In particular, the "fourth factor considers whether the agency's opposition to disclosure had a reasonable basis in law and whether" the agency was "recalcitrant in its opposition to a valid claim or otherwise engaged in obdurate behavior." *Davy*, 550 F.3d at 1162; *see also Tax Analysts v. Department of Justice*, 965 F.2d 1092, 1097 (D.C. Cir. 1992); *Fenster v. Brown*, 617 F.2d 740, 744 (D.C. Cir. 1979); *Nationwide Building Maintenance, Inc. v. Sampson*, 559 F.2d 704, 712 (D.C. Cir. 1977). Under the fourth factor, the question for a district court is not whether the agency's legal and factual positions were correct. The question is whether the

agency's positions were reasonable. *See Davy*, 550 F.3d at 1162.[1]

Here, in applying the fourth factor, the District Court determined that the CIA had "advanced a reasonable legal position and did not engage in any recalcitrant or obdurate behavior." *Morley*, 245 F. Supp. at 78. Morley disagrees.

To reiterate, our standard of review of the District Court's conclusion on the fourth factor is deferential: We ask only whether the District Court's decision was reasonable. And in reviewing the District Court's conclusion on the fourth factor (which in turn asks whether the agency's position was reasonable), we end up applying what is in essence a double dose of deference. The question for us is whether the District Court *reasonably* (even if incorrectly) concluded that the agency *reasonably* (even if incorrectly) withheld documents.

Morley advances five main arguments that the CIA acted unreasonably in response to his FOIA request.

---

[1] The first three factors have the effect of eliminating the possibility of attorney's fees for certain prevailing plaintiffs. We doubt that is a proper interpretation of the statute, for reasons that have been detailed elsewhere. *See Morley v. CIA*, 719 F.3d 689, 690-693 (D.C. Cir. 2013) (Kavanaugh, J., concurring); *Davy v. CIA*, 550 F.3d 1155, 1166 (D.C. Cir. 2008) (Randolph, J., dissenting). It is arguable that the fourth factor alone should constitute the test under FOIA for attorney's fees. That approach would, among other things, greatly simplify these unnecessarily complicated FOIA attorney's fees cases and eliminate the unfair discrimination against certain prevailing plaintiffs that results from the first three factors. As a three-judge panel, however, we of course must and do adhere to our circuit precedent.

*First*, Morley contends that the CIA unreasonably missed the initial 20-day statutory deadline for responding to the FOIA request. Morley is correct that the CIA failed to properly respond to the request within 20 days, as required by statute. *See* 5 U.S.C. § 552(a)(6)(A)(i). But that is true of a vast number of FOIA requests. The statute itself imposes consequences on the agency for delay past the 20-day mark. *See Citizens for Responsibility and Ethics in Washington v. FEC*, 711 F.3d 180, 189 (D.C. Cir. 2013). But the statute does not suggest that an award of attorney's fees should be automatic in those situations. And some delay past the 20-day mark is not necessarily so unreasonable in and of itself as to *require* an award of attorney's fees to an ultimately prevailing plaintiff. We are aware of no court of appeals case that has suggested otherwise.

This case is a fine example of why that is so. According to the responsible CIA official, when the CIA processed Morley's FOIA request, "the Agency had 1,675 FOIA and" Privacy Act "requests in queue in various stages of processing." Herman Declaration ¶ 31. Of those outstanding requests, "approximately 940 in the same queue as" Morley's request were still in process. *Id*. To be sure, agencies should strive to meet relevant statutory deadlines. But here, the CIA faced a large backlog of requests. Therefore, based on the record, the District Court reasonably concluded that the agency had a reasonable basis for missing the 20-day deadline.

*Second*, Morley asserts that the CIA acted unreasonably when it initially referred Morley to the National Archives and Records Administration to obtain records. In its initial response to Morley, the CIA explained that it had gathered CIA records related to the Kennedy assassination, as required by the President John F. Kennedy Assassination Records Collection Act of 1992, which we will refer to as the JFK Act. Pursuant

to the Act, the CIA then transferred the records to the National Archives. The Archives in turn made the records available to the public. The CIA also explained to Morley that the collection at the National Archives contained the records of numerous other agencies and entities, and that the records were searchable on the Internet.

In an earlier round of the underlying FOIA litigation in Morley's case, this Court concluded that the JFK Act did not relieve the CIA of its duty to search for and produce Kennedy assassination records in response to a FOIA request – even when the exact same records were publicly available at the Archives. This Court ruled that the CIA therefore acted *incorrectly* when it initially referred Morley to the National Archives. *See Morley v. CIA*, 508 F.3d 1108, 1119-20 (D.C. Cir. 2007).

Of course, the purpose of the fourth factor of the attorney's fees inquiry is to determine not whether the agency acted correctly, but rather "whether the agency has shown that it had any colorable or reasonable basis for not disclosing" the relevant material. *Davy*, 550 F.3d at 1163. Here, the CIA initially directed Morley to the Archives because the collection at the Archives would include the relevant CIA records that were responsive to Morley's FOIA request, as well as other potentially relevant documents from other government agencies. In doing so, the CIA relied on the JFK Act, which had been enacted by Congress to centralize all of the Federal Government's Kennedy assassination records in one place: the National Archives. And the CIA believed that Congress's decision to maintain all the records at the Archives relieved individual agencies of the unnecessary burden of producing duplicate copies of those same records in response to FOIA requests. As a general matter, an agency cannot avoid a FOIA request by simply saying that the documents are already

publicly available. *See Department of Justice v. Tax Analysts*, 492 U.S. 136, 150-55 (1989). But the CIA analogized the situation here to a principle articulated by this Court in *Tax Analysts*: "an agency need not respond to a FOIA request for copies of documents where the agency itself has provided an alternative form of access." *Tax Analysts v. Department of Justice*, 845 F.2d 1060, 1065 (D.C. Cir. 1988); *see also Tax Analysts*, 492 U.S. at 152 (stating "an agency need not disclose materials that it has previously released"). With respect to Kennedy assassination records, Congress itself had provided an "alternative form of access," or so the CIA reasoned.

In light of the detailed statutory scheme and the analogous FOIA case law, the CIA's decision to direct Morley to the central Archives repository of records related to the Kennedy assassination was hardly unreasonable. Indeed, the CIA's initial letter responding to Morley sought to be helpful by informing Morley that other agencies' records were also available at the Archives. To be sure, the CIA turned out to be incorrect legally (or so this Court later ruled) in thinking that the public availability of documents at the Archives entirely relieved the agency of its duty to search for its own copies of those same documents. But the CIA's ultimately incorrect legal view was not unreasonable, at least in the unique context of the statute governing the Kennedy assassination records. Indeed, it would seem inefficient (to put it mildly) to require an agency such as the CIA to expend scarce agency resources repeatedly gathering anew copies of documents that the agency had already gathered and made available to the public at the Archives. In short, given the statute and given the language of *Tax Analysts*, the CIA had a strong legal argument that referring Morley to the Archives was legally permissible and appropriate.

It is true that the JFK Act itself provided that members of the public still had a right to "file" FOIA requests with an executive agency. President John F. Kennedy Assassination Records Collection Act of 1992, Pub. L. No. 102-526, § 11(b). But that statutory language – "file" – said nothing to suggest that an agency had a duty to collect and produce copies of the exact same documents that the agency had already collected and transferred to the Archives and that would be available to the public there. In other words, it was at least arguable that the JFK Act did not require agencies to conduct entirely redundant searches for *copies* of those documents that the agency had already transferred to the Archives. As noted, such a scheme would seem highly inefficient to the point of absurdity. So it was at least reasonable – even if not ultimately correct – for the CIA to read the JFK Act's provision referencing FOIA to speak only to those records that might be responsive to a FOIA request and that the CIA had *not* transferred to the Archives.

In that vein, Morley is on somewhat stronger ground in saying that the CIA should have realized that his FOIA request – even though it expressly referenced the Kennedy assassination – asked the CIA for some categories of CIA documents that may not have been transferred to the Archives. We agree with Morley that the CIA's initial response to him was not entirely sufficient, as was revealed when the CIA ultimately produced some responsive documents that had not been transferred to the Archives. But was the CIA's initial response at least reasonable? In light of the unique nature of the JFK Act and the CIA's extraordinarily extensive efforts to gather records under that Act for transfer to the Archives (as detailed in the various CIA declarations in this case), it was at least reasonable for the CIA to believe that Morley's request as phrased would lead only to records that the agency had already gathered and produced to the Archives.

In any event, the District Court's conclusion – namely, that the CIA's response was reasonable – was at least within the zone of reasonableness. This is where the double dose of deference in reviewing the District Court's analysis of factor four may matter. Recall that the very narrow question for us is simply whether the District Court *reasonably* concluded that the CIA acted *reasonably* in initially directing Morley to the Archives. Deference piled on deference. We answer the question in the affirmative.

*Third*, Morley argues that the CIA unreasonably delayed the release of responsive operational files. Operational files describe certain foreign intelligence or counterintelligence activities. *See* 50 U.S.C. § 431(b). Typically, operational files are exempt from FOIA requests. *See* 50 U.S.C. § 431(a). But the statute exempting those files also contains several exceptions. *See* 50 U.S.C. § 431(c). The CIA argued that the relevant operational files did not fall into any of those statutory exceptions and thus were exempt. This Court later rejected the CIA's interpretation of that statute, but we noted that the CIA had relied "on the only opinion by a circuit court of appeals to address" the relevant provision. *Morley*, 508 F.3d at 1118. For our purposes here, what matters is that it was entirely reasonable for the CIA to rely on the only available court of appeals precedent when the agency withheld operational records. In short, the District Court reasonably concluded that the agency acted reasonably in withholding the operational records.

*Fourth*, Morley contends that the CIA unreasonably asserted a *Glomar* response to a certain category of requested covert activities records. When an agency is not willing to confirm or deny the existence of certain documents, it may submit a *Glomar* response. Here, the CIA believed that confirming or denying certain of Joannides's covert activities

could damage national security. This Court ultimately concluded that the *Glomar* response, once it was sufficiently detailed, was lawful. *See Morley v. CIA*, 466 Fed. App'x 1 (D.C. Cir. 2012). It follows that the District Court reasonably concluded that the CIA's *Glomar* response was reasonable.

*Fifth*, Morley argues that the CIA unreasonably asserted Exemption 2 (the FOIA exemption for internal personnel rules and practices) as to records concerning internal procedures and clerical information. The agency's position was correct under this Court's law at the time. To be sure, during the pendency of this multi-decade litigation, the Supreme Court decided a case that disagreed with this Circuit's longstanding interpretation of Exemption 2. *See Milner v. Department of the Navy*, 562 U.S. 562 (2011). Afterwards, the CIA withdrew its Exemption 2 assertion in this case. *See Morley*, 466 Fed. App'x at 1. Given the state of the law at the time that the CIA initially asserted Exemption 2, the District Court reasonably concluded that the CIA reasonably asserted Exemption 2.

In sum, each of the positions that the CIA advanced to initially withhold records was reasonable – or at least the District Court could reasonably conclude as much. Therefore, the District Court did not abuse its discretion in concluding that the fourth factor weighed in favor of the Government.

The remaining question is whether the District Court reasonably balanced the four factors. To review, factors one through three favored Morley, albeit only slightly. Because the first three factors favored Morley, Morley argues that the District Court should have awarded him attorney's fees. But the District Court reasonably concluded that the fourth factor heavily favored the CIA. And as explained above, when the four factors point in different directions, the district court has very broad discretion how to balance the factors and whether

to award or deny fees. There are many reasonable approaches a district court might take in balancing the factors, and it is difficult for an appellate court – with our deferential standard of review – to second-guess that balancing. And in this case, especially with factor four heavily favoring the agency and the other three factors only slightly favoring Morley, we cannot say that the District Court abused its discretion in concluding that the fourth factor tilted the balance in favor of denying attorney's fees.

\* \* \*

In closing, we note a few respectful points in response to the dissent.

First, the dissent says that the District Court did not heed this Court's prior remand. We disagree. The dissent appears to be conflating our prior decision in Morley's case and our prior decision in *Davy*. In *Davy*, our decision *required* the District Court to award attorney's fees. By contrast, in Morley's case, our prior decision simply remanded for the District Court to "consider the remaining factors and the overall balance afresh." *Morley v. CIA*, 810 F.3d 841, 845 (D.C. Cir. 2016). On remand here, the District Court did just that. We can disagree about whether the District Court correctly evaluated and balanced the four factors. But in our view, it is inaccurate to say that the District Court in any way flouted or disregarded our prior decision.

Second, the dissent contends that we have disregarded circuit precedent and replaced this Court's four-factor test with an inquiry that looks only to the fourth factor: whether the CIA acted reasonably in withholding documents. The dissent is incorrect. In this opinion, we have considered both the District Court's analysis of each individual factor and the District

Court's balancing of the four factors. We first concluded that the District Court did not abuse its discretion in its analysis of the individual factors. We then concluded that the District Court acted within its discretion when it concluded that the fourth factor outweighed the other three. And to prove that we have not ditched the four-factor test, we will be crystal clear: If the District Court had *awarded* attorney's fees in this case, we would have affirmed. In other words, when the first three factors favor the plaintiff, but the fourth does not, a district court retains very broad discretion under the four-factor test about how to balance the factors and whether to award attorney's fees. We have faithfully and carefully applied the four-factor test set forth by our precedents.

In light of the statutory text of the FOIA attorney's fees provision – in particular, the word "may" – and our deferential standard of review, we affirm the judgment of the District Court denying attorney's fees.

*So ordered.*

KAREN LeCRAFT HENDERSON, *Circuit Judge*, dissenting: Over the past 15 years, we have remanded this case four times. During the same period, we have reversed the same district court twice in a nearly identical Freedom of Information Act (FOIA) case. That makes six opinions from this court. I share the majority's displeasure with the resulting waste of judicial resources, especially because "fee litigation [is] one of the last things lawyers and judges should be spending their time on." *Baylor v. Mitchell Rubenstein & Assocs., P.C.*, 857 F.3d 939, 960 (D.C. Cir. 2017) (Henderson, J., concurring). Jefferson Morley, however, is not to blame for this "staggering" saga. Maj. Op. 2. But for the district court's repeated misapplication of FOIA precedent, this case could have ended as early as 2006. If it had been correctly decided the first time, "Morley would already have his fees, and this litigation would have long since concluded." *Morley v. CIA*, 719 F.3d 689, 693 (D.C. Cir. 2013) (Kavanaugh, J., concurring). Unfortunately, the district court got it wrong again. The majority, it appears to me, overlooks the district court's latest errors in order to "bring the case to an end." Maj. Op. 2. In the process, it distorts our settled four-factor test for awarding attorney fees under FOIA and replaces it with a single-factor reasonableness inquiry of its own design.

What's worse, the majority misapplies its own test. It holds that the Central Intelligence Agency (CIA) reasonably declined to produce *any* documents in response to Morley's FOIA request and instead directed him to another agency. The holding is plainly contrary to *Tax Analysts v. DOJ*, which declared that "an agency must *itself* make disclosable agency records available to the public and may not on grounds of administrative convenience avoid this statutory duty by pointing to another public source for the information." 845 F.2d 1060, 1067 (D.C. Cir. 1988) (emphasis in original), *aff'd*, 492 U.S. 136 (1989). To avoid this precedent—and to explain away the district court's contrary conclusions—the majority leans heavily on the standard of review, declaring that it requires "[d]eference piled on deference." Maj. Op. 11. In my

2

view, my colleagues pile their deference far too high. Our abuse-of-discretion review, although forgiving, is not an empty formality: here, the district court's discretion was constrained by our earlier opinions in this very case and by our closely related decision in *Davy v. CIA*, 550 F.3d 1155 (D.C. Cir. 2008). Because the district court failed to follow precedent and because it misapplied our four-factor test—for the third time— I believe it abused its discretion. Accordingly, I respectfully dissent.

## I. BACKGROUND

In brief, the facts of this case are as follows:

> Morley is a journalist and news editor. On July 4, 2003, Morley submitted a request under FOIA to the CIA for "all records pertaining to CIA operations officer George Efythron Joannides." The letter makes clear that Morley sought information connected to President John F. Kennedy's assassination. The CIA responded in the beginning of November, 2003, with a letter explaining that the National Archives and Records Administration ("NARA") had a public collection of CIA records related to the JFK assassination, which was searchable online. The CIA directed him to submit his request to NARA and did not release any records directly to Morley at that time.
>
> Morley subsequently filed suit in this Court on December 16, 2003, to enforce his FOIA request. After further processing of the request, along with an appeal up to our Circuit, the CIA ultimately provided Morley with a total of 524 responsive records (some of which were

> segmented and/or redacted).  Of those records, 113 were from the files the CIA previously had transferred to NARA.

*Morley v. CIA*, 245 F. Supp. 3d 74, 76 (D.D.C. 2017) (*Morley X*) (quoting *Morley v. CIA* (*Morley VIII*), 59 F. Supp. 3d 151, 153-54 (D.D.C. 2014)).

The majority truncates the history of this case, which, with this appeal, marks *Morley XI*.  I believe more detail is needed to explain how our earlier decisions should have limited the district court's discretion here.

In response to Morley's initial FOIA request, the CIA referred him to NARA without producing any of the requested documents.  Morley filed suit.  After the CIA produced three documents in full and 112 documents in segregable form, the district court granted its motion for summary judgment. *Morley v. CIA* (*Morley I*), 453 F. Supp. 2d 137, 142 (D.D.C. 2006).  We affirmed in part but reversed in the main, giving seven remand instructions. *Morley v. CIA* (*Morley II*), 508 F.3d 1108, 1129 (D.C. Cir. 2007).  We instructed the district court to direct the CIA to: (1) search operational files; (2) search records transferred to NARA; (3) supplement its explanation regarding missing monthly reports; (4) provide details regarding the scope of its search; (5) explain why withheld information was not segregable; (6) substantiate its *Glomar* response; and (7) provide further justification for its reliance on FOIA Exemptions 2, 5 and 6. *See id.*

As most relevant here, we explained that FOIA reflects "a 'settled policy' of 'full agency disclosure,'" *id.* at 1119 (quoting *Tax Analysts*, 845 F.2d at 1064), and "an agency has 'withheld' a document under its control when, in denying an otherwise valid request, it directs the requester to a place outside of the agency where the document may be publicly available," *id.*

(alterations omitted) (quoting *DOJ v. Tax Analysts*, 492 U.S. 136, 150 (1989)). Because the CIA directed Morley to NARA rather than searching its own records, we held that it had failed to meet its duties under FOIA. *Id.* at 1120.

Over the course of two years on remand, the CIA released 409 additional documents to Morley. The district court then granted the CIA's renewed motion for summary judgment. *Morley v. CIA* (*Morley III*), 699 F. Supp. 2d 244 (D.D.C. 2010). On appeal, we affirmed in large part but remanded the case so the district court could examine Exemption 2[1] in light of a then-recently decided Supreme Court case, *Milner v. Department of Navy*, 562 U.S. 562 (2011). *Morley v. CIA* (*Morley V*), 466 F. App'x 1 (D.C. Cir. 2012) (per curiam). On remand, the district court dismissed the case as moot. *Morley v. CIA* (*Morley VI*), No. 03-2545, 2013 WL 140245 (D.D.C. Jan. 9, 2013). Thus ended Morley's merits dispute.

While the CIA was defending on the merits of Morley's FOIA suit, the same district judge heard an attorney's fees dispute in another case involving a journalist (William Davy) who sought documents from the CIA regarding President Kennedy's assassination. *Davy v. CIA* (*Davy I*), 357 F. Supp. 2d 76 (D.D.C. 2004). After obtaining documents through a consent order, Davy sought attorney's fees. *Davy v. CIA* (*Davy II*), 456 F.3d 162 (D.C. Cir. 2006). The district court first denied Davy's request. *Id.* at 163. We reversed, concluding that Davy was a prevailing party. *Id.* at 166. We then remanded for the district court to determine whether Davy was entitled to fees and, if so, to calculate those fees. *Id.*

---

[1] Exemption 2 protects from disclosure agency material that is "related solely to the internal personnel rules and practices of an agency." 5 U.S.C. § 552(b)(2).

On remand, the district court again denied Davy's request for fees. *Davy v. CIA* (*Davy III*), 496 F. Supp. 2d 36 (D.D.C. 2007). Eventually, applying our "familiar four-factor test," we again reversed. *Davy v. CIA* (*Davy IV*), 550 F.3d 1155, 1157 (D.C. Cir. 2008).[2] We first addressed the "public benefit" factor, noting that the Kennedy assassination was an "event of national importance" and the information Davy obtained might help the public make "vital political choices." *Id.* at 1160. We then examined the second and third factors in tandem and concluded that, although Davy may enjoy some pecuniary benefit from publishing books or articles as a result of his search, "that alone cannot be sufficient to preclude an award of attorney's fees under FOIA." *Id.* at 1160. Therefore, we held, the district court abused its discretion in finding that the second and third factors weighed against Davy. *Id.* at 1162. As to the fourth factor, we explained that, because the CIA failed even to respond to Davy's request for documents until after he filed suit, the CIA was unreasonable in its initial withholding. *Id.* at 1163. Accordingly, all four factors favoring Davy, we remanded to the district court for it to award fees. Thus ended Davy's fees dispute.

Meanwhile, Morley filed an application for attorney's fees. *Morley v. CIA* (*Morley IV*), 828 F. Supp. 2d 257 (D.D.C. 2011). The district court denied his request, finding that all

---

[2] As discussed *infra*, the four factors are: (1) the public benefit derived from the case; (2) the commercial benefit to the plaintiff; (3) the nature of plaintiff's interest in the records; and (4) the reasonableness of the agency's withholding of the requested documents. *Davy IV*, 550 F.3d at 1159. Some of our sister circuits have adopted the same four-factor test. *See, e.g.*, *Pietrangelo v. U.S. Army*, 568 F.3d 341, 343 (2d Cir. 2009); *Texas v. ICC*, 935 F.2d 728, 730 (5th Cir. 1991); *Church of Scientology of Cal. v. U.S. Postal Serv.*, 700 F.2d 486, 492 (9th Cir. 1983).

four factors weighed against him. *Id.* at 260. Continuing a trend, we vacated the decision and remanded. *Morley v. CIA* (*Morley VII*), 719 F.3d 689 (D.C. Cir. 2013) (per curiam). In doing so, we directed the district court to our previous opinion in *Davy IV*, which stated that records "about individuals allegedly involved in President Kennedy's assassination serve a public benefit." *Id.* at 690 (alterations omitted) (quoting *Davy IV*, 550 F.3d at 1159). Moreover, we quoted *Davy IV*'s instruction that the public-benefit factor should not "disqualify plaintiffs who obtain information that, while arguably not of immediate public interest, nevertheless enables further research ultimately of great value and interest, such as here the public understanding of a [p]residential assassination." *Id.* (quoting *Davy IV*, 550 F.3d at 1162 n.3). We remanded for the district court to consider *Davy IV* but did not express any position on whether it should award fees. *Id.*

On remand, the district court again denied fees. *Morley VIII*, 59 F. Supp. 3d at 153. After analyzing the 524 documents the CIA ultimately produced in response to Morley's request, the district court held that the "litigation has benefited the public only slightly, if at all." *Id.* at 158. Without providing detail, it decided that its "analysis of the other factors remain[ed] the same" and denied Morley's application. *Id.*

For the fourth time, we remanded, concluding that "the district court improperly analyzed the public-benefit factor by assessing the public value of the information *received* rather than the 'potential public value of the information sought.'" *Morley v. CIA* (*Morley IX*), 810 F.3d 841, 842 (D.C. Cir. 2016) (quoting *Davy IV*, 550 F.3d at 1159). We declared that, when evaluated *ex ante*, "Morley's request had potential public value." *Id.* at 844. We remanded for the district court to evaluate all four factors anew. *Id.* at 845.

This protracted history brings us to the district court's most recent fees order. *Morley v. CIA*, 245 F. Supp. 3d 74 (D.D.C. 2017) (*Morley X*). In view of *Morley IX*, the district court found that the "expectation-adjusted value of the public benefit that plaintiff sought to provide was small." *Id.* at 77. The court saw the second and third factors as a "close call." *Id.* at 78. Specifically, it found that Morley received "some compensation for writing news articles" and saved time and energy by not having to seek documents in NARA's Kennedy collection. *Id.* at 77. "Thankfully," the court concluded, "the final factor breaks the tie—it weighs heavily against Morley and is ultimately dispositive." *Id.* at 78. Accordingly, the district court denied Morley's motion for attorney's fees a third time. *Id.*

## II. DISCUSSION

Under the traditional "American Rule," each party to a lawsuit pays its own attorney's fees. *See Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 245 (1975). FOIA creates a statutory exception to the American Rule; it provides that the "court may assess against the United States reasonable attorney fees . . . in any case under this section in which the complainant has substantially prevailed." 5 U.S.C. § 552(a)(4)(E)(i). We have explained that "FOIA's attorney's fees provision . . . was designed to lower the 'often . . . insurmountable barriers presented by court costs and attorney fees to the average person requesting information under the FOIA.'" *Tax Analysts v. DOJ*, 965 F.2d 1092, 1095 (D.C. Cir. 1992) (quoting *Cuneo v. Rumsfeld*, 553 F.2d 1360, 1364 (D.C. Cir. 1977)). "[T]he award of FOIA counsel fees has as its fundamental purpose the facilitation of citizen access to the courts, and should not be subject to a grudging application." *First Amendment Coal. v. DOJ*, 878 F.3d 1119, 1130 (9th Cir. 2017) (internal quotation marks omitted).

8

We review the district court's application of the four-factor test for abuse of discretion. *Id.* at 1158. The district court's discretion has two important limits. First, it is constrained by precedent. *Koon v. United States*, 518 U.S. 81, 100 (1996) ("A district court by definition abuses its discretion when it makes an error of law."). Second, the district court's discretion is limited by the mandate rule, which provides that "an inferior court has no power or authority to deviate from the mandate issued by an appellate court." *Briggs v. Penn. R.R.*, 334 U.S. 304, 306 (1948); *see United States v. Kpodi*, 888 F.3d 486, 491 (D.C. Cir. 2018) ("A district court commits legal error and therefore abuses its discretion when it fails to abide by . . . the mandate rule."). In long-running litigation like this, the district court is especially constrained because it may not "do anything which is contrary to either the letter or spirit of the mandate" which we issued in our four previous remands. *City of Cleveland v. Fed. Power Comm'n*, 561 F.2d 344, 346 (D.C. Cir. 1977) (quoting *Yablonski v. United Mine Workers of Am.*, 454 F.2d 1036, 1038 (D.C. Cir. 1971)).

My colleagues do not discuss these two constraints, instead focusing on the "double dose of deference" they believe we owe the district court's fourth-factor "reasonableness" assessment. Maj. Op. 6. Hence, they acknowledge our four-factor test but do not apply it. *See* Maj. Op. 6 n.1 ("[W]e of course must and do adhere to our circuit precedent."). In a telling footnote, they "doubt" that the first three factors have any role to play in "a proper interpretation of the statute." *Id.* They suggest instead that "the fourth factor alone should constitute the test under FOIA for attorney's fees." *Id.* There may be good reason to question our FOIA precedent but, as a three-judge panel, we are bound to apply it.[3] With respect, I

---

[3] Some members of our court question the four-factor FOIA test and call for en banc review. *See Morley VII*, 719 F.3d at 690-91

9

believe the majority fails to do so. Indeed, the majority accepts that the first three factors favor Morley but does not review the district court's reasoning and, worse, does not adequately evaluate the weight of the first three factors in light of *Morley IX* or *Davy IV*.[4]  *See* Maj. Op. 4-5. As a result, the majority necessarily relies on the "fourth factor alone" in affirming the district court's determination that Morley is not entitled to attorney's fees. *Id.*[5] Under a faithful application of our four-factor test, I believe the district court abused its discretion.[6]

---

(Kavanaugh, J., concurring); *Davy IV*, 550 F.3d at 1166 (Randolph, J., dissenting).

[4]  As discussed *infra*, it is not clear that the district court itself found that the first three factors favor Morley.

[5]  In attempting to establish that it does not rely only on the "reasonableness" factor of our test, the majority declares: "If the District Court had *awarded* attorney's fees in this case, we would have affirmed." Maj. Op. 14. This is pure dictum. The district court did *not* award fees and my colleagues' declaration of what they would do in a hypothetical is entirely speculative. Moreover, had the district court awarded fees, there would have been no legal error to correct and no basis for remand.

[6]  Some of our opinions suggest that each of the four factors has a threshold that must be met. *See Morley IX*, 810 F. 3d at 844 ("[I]f it's plausible *ex ante* that a request has a decent chance of yielding a public benefit, the public-benefit analysis ends there."). Other opinions suggest that the inquiry is akin to a freestanding balancing test. *See Cuneo*, 553 F.2d at 1367 ("[T]he trial court must weigh the facts of each case against the criteria of the existing body of law on the award of attorney fees and then exercise its discretion in determining whether an award is appropriate . . . ."). In either event, the majority's approach is flawed. If each factor can be met with by a "yes" or "no" answer, three in favor should outweigh one against. On the other hand, if the factors should be weighed against each other

## A.  *Factor One: Public Benefit*

The district court found the potential public benefit of Morley's request "small."   Its finding understates the importance of the Kennedy assassination.[7]  At least three times, we have recognized the potential public benefit of JFK-related FOIA inquiries.  In *Davy IV*, we noted that the documents Davy sought provided "important new information bearing on the controversy over former District Attorney Jim Garrison's contention that the CIA was involved in the assassination plot."  550 F.3d at 1159 (quoting Davy Decl.) (alterations omitted).  Then, in *Morley VII*, we vacated and remanded the district court order denying fees so that it could reconsider its public-benefit analysis in light of *Davy IV*.  *Morley VII*, 719 F.3d at 690.

---

in a balancing test, the majority errs by failing to review fully the district court's assessment of the first three factors.

[7] Few events in our national history have garnered as much attention as the assassination of President Kennedy.  Three times since 1963, the Congress has investigated the details of the assassination.  In 1964, the Warren Commission concluded that Lee Harvey Oswald killed President Kennedy alone and unaided.  Joint Appendix (JA) 66.  In 1978, however, the House Select Committee on Assassinations (HSCA) reopened the Kennedy investigation.  JA 68.   Ultimately, the HSCA concluded that Oswald had killed President Kennedy with unidentifiable co-conspirators; thereafter, the conspiracy theories multiplied.  *Id.*  In 1992, the Congress re-entered the fray, enacting the President John F. Kennedy Assassination Records Collection Act of 1992, Pub. L. 102-526 (codified at 44 U.S.C. § 2107 Note) (JFK Act), which charged the Assassination Records Review Board to collect and release all unclassified documents related to the assassination.

Finally, we have expressly recognized the usefulness of Morley's specific request. *Morley IX*, 810 F.3d at 844. Acknowledging that "a requester's mere *claim* of a relationship to the assassination" does not "*ipso facto* satisf[y] the public interest criterion," we noted that, if the subject of the request "is the Kennedy assassination—an event with few rivals in national trauma and in the array of passionately held conflicting explanations—*showing potential public value is relatively easy*." *Id.* at 844 (second emphasis added). We continued:

> Morley's request had potential public value. He has proffered—and the CIA has not disputed—that Joannides served as the CIA case officer for a Cuban group, the DRE, with whose officers Oswald was in contact prior to the assassination. Travel records showing a very close match between Joannides's and Oswald's times in New Orleans might, for example, have (marginally) supported one of the hypotheses swirling around the assassination. In addition, this court has previously determined that Morley's request sought information "central" to an intelligence committee's inquiry into the performance of the CIA and other federal agencies in investigating the assassination. Under these circumstances, there was at least a modest probability that Morley's request would generate information relevant to the assassination or later investigations.

*Id.* at 844-45. In other words, we held that Morley satisfied the public-benefit factor *in this case*. *Id.* at 844 ("[I]f it's plausible *ex ante* that a request has a decent chance of yielding a public benefit, the public-benefit analysis ends there.").

None of this is to say that Morley's assassination theories necessarily have any merit. The point is that we have twice remanded the case based on the district court's failure to assess properly the public benefit of Morley's FOIA request. Thus, the district court's description of the public value of the information sought by Morley as "small" ignores our decisions in *Davy IV*, *Morley VII* and *Morley IX*. *See Kpodi*, 888 F.3d at 491 (explaining mandate rule).

## B. Factors 2 and 3: The Requester's Interest

Factors two and three are controlled by *Davy IV*. *See* 550 F.3d at 1162 ("[T]he district court abused its discretion in determining that the second and third factors weighed against Davy . . . ."). In addressing these factors, the majority cites the oral argument transcript for the proposition that "the District Court 'found that three of the four factors favored Morley.'" Maj. Op. 4 (quoting Oral Arg. Tr. at 4). Contrary to Morley's counsel's assertions, however, the district court did not hold that factors two and three favored Morley. Rather, the district court stated that "the first three factors do not clearly indicate whether the Court should award attorney's fees—it is a very close call." *Morley X*, 245 F. Supp. 3d at 78.[8] Thus, it is far from clear how the district court viewed the second and third factors. If it believed the first three factors indeed favored Morley, the balance at that stage would have undoubtedly

---

[8] In a footnote, the district court provided a caveat: "In an abundance of caution, therefore, I will clarify that even if costs avoided do not count as a commercial benefit, the public interest in incentivizing Morley would be low enough in this case that I would still find the fourth factor dispositive." *Morley X*, 245 F. Supp. 3d at 78 n.2. It is unclear how—or if—this comment affected the district court's analysis but, in any event, the district court did not conclude that factors two or three affirmatively favored Morley.

tipped in his favor and there would have been no "tie" to break. *Id.*

Moreover, this case is indistinguishable from *Davy IV* on factors two and three.[9]  Like Davy, Morley is a journalist.  Like Davy, Morley "hope[s] to earn a living plying [his] trade" and receives modest remuneration for the articles he writes.  *Davy IV*, 550 F.3d at 1160; *see also Nationwide Bldg. Maint., Inc. v. Sampson*, 559 F.2d 704, 712 (D.C. Cir. 1977) ("For the purposes of applying this criterion, news interests should not be considered commercial interests.").  Like Davy, Morley has an interest in investigating President Kennedy's assassination.  And like Davy, Morley may not be able to publish the information he obtains until long after his lawsuit ends.  But unlike in Davy's case—where we held that factors two and three favored Davy—the district court here held that the first three factors were a "tie" or a "very close call" despite already having counted the public benefit in Morley's favor.  *Morley X*, 245 F. Supp. 3d at 78.  In my view, this holding was legal error.

Nor does it make any difference that the CIA referred Morley to NARA rather than denying his request outright.  Although the district court noted that Morley obtained some

---

[9]  The majority suggests that I am "conflating our prior decision in Morley's case and our prior decision in *Davy*."  Maj. Op. 13.  Not so.  I recognize that our mandate in *Davy IV* does not by its express terms apply to this case.  Rather, *Davy IV* stands as legal precedent that defines the limits of the district court's discretion to award fees.  *See Koon*, 518 U.S. at 100.  Hence, *Davy IV* is binding because it is factually on all fours with Morley's case with respect to factors two and three.  Indeed, neither the district court nor the majority attempts to distinguish *Davy IV* in analyzing the second and third factors.  *See Morley X*, 245 F. Supp. 3d at 77-78 (citing *Davy IV* but failing to discuss its facts or its holding); Maj. Op. 5 (citing *Davy IV* with "*cf.*" signal and no accompanying explanation).

benefit by securing documents from the CIA rather than searching through NARA on his own, the record is clear that only 113 (of the 524) documents produced were available through NARA. *Id.* No amount of searching the public records would have unearthed those 411 documents. Unlike the plaintiff in *Tax Analysts*, who knew that the requested documents eventually would become public, 845 F.2d at 318-19, Morley had no way of knowing whether the files he sought were available at NARA. *See Davy IV*, 550 F.3d at 1164 (Tatel, J., concurring) ("Before suing, requesters in Davy's position have no idea what documents responsive to their FOIA requests might contain because the agency has told them nothing.").

In sum, factors two and three cannot be "close calls," at least not after *Davy IV*. *Davy IV* makes clear that factors two and three unquestionably weigh in Morley's favor and the district court erred in concluding otherwise. *Davy IV*, 550 F.3d at 1162.

## C. Factor Four: Reasonableness

Finally, with regard to the fourth factor, "the heart of this case," Maj. Op. 5, the majority—mistakenly, in my view—concludes that the CIA's response to Morley's request was reasonable. The fourth factor considers whether the agency's opposition to disclosure "had a reasonable basis in law." *Tax Analysts*, 965 F.2d at 1096. It examines whether the agency was "recalcitrant in its opposition to a valid claim or otherwise engaged in obdurate behavior." *Davy IV*, 550 F.3d at 1162 (quoting *LaSalle Extension Univ. v. FTC*, 627 F.2d 481, 486 (D.C. Cir. 1980)). And the burden is on the CIA to show "that it had any colorable or reasonable basis for not disclosing the material until after [the plaintiff] filed suit." *Id.* at 1163.

In *Morley II*, we assessed the CIA's response to Morley's FOIA request and found it lacking. Specifically, we reversed

the district court's summary judgment order and held that the agency's response was legally insufficient on *seven separate grounds*. The majority discusses five in its opinion. It acknowledges that the CIA: (1) missed the 20-day statutory deadline to respond, Maj. Op. 7; (2) incorrectly referred Morley to NARA rather than responding to his FOIA request itself, Maj. Op. 7-11; (3) failed to search its operational files, Maj. Op. 11; (4) submitted an incomplete *Glomar* response, Maj. Op. 11-12; and (5) relied on an interpretation of Exemption 2 that was later overruled, Maj. Op. 12. It addresses these errors of law seriatim and labels them "incorrect legally," Maj. Op. 9, but not "unreasonable." To me, the CIA's *multiple* flawed legal positions suggests that it was "recalcitrant" in declining to produce *any* documents before being sued. *Davy IV*, 550 F.3d at 1162. At the least, the errors collectively undermine the district court's conclusion that the fourth factor "weighs *heavily* against Morley." *Morley X*, 245 F. Supp. 3d at 78 (emphasis added).

With respect to the CIA's decision to refer Morley to NARA instead of producing any documents, however, I find the CIA's—and the district court's—positions entirely unreasonable. In *Tax Analysts*, we held that "in response to a FOIA request, an agency must *itself* make disclosable agency records available to the public and may not on grounds of administrative convenience avoid this statutory duty by pointing to another public source for the information." 845 F.2d at 1067 (emphasis in original). We reaffirmed the holding in *Morley II*, declaring that "an agency has 'withheld' a document under its control when, in denying an otherwise valid request, it directs the requester to a place outside of the agency where the document may be publicly available." *Morley II*, 508 F.3d at 1119 (quoting *Tax Analysts*, 492 U.S. at 150).

On its face, our holding in *Tax Analysts* (and the Supreme Court's endorsement thereof) should control this case. It is undisputed that Morley made a valid FOIA request. It is likewise undisputed that the CIA initially directed Morley to "another public source for the information"—NARA—without producing any of the documents he requested. *Tax Analysts*, 845 F.2d at 1067. Thus, the CIA did not "*itself*" disclose its records to Morley. *Id.* Nonetheless, to bring this case within the ambit of *Tax Analysts*, the majority reasons that "*Congress itself* had provided 'an alternative form of access'" to the records. Maj. Op. 9 (emphasis added). But the Congress is not the CIA and congressionally mandated access to documents is not the same as agency access under FOIA. Simply put, without statutory authorization, the CIA is not excused from its FOIA obligations. Both the district court and the majority use the JFK Act to support the reasonableness of the CIA's initial withholding. The JFK Act instructs executive agencies to deliver documents related to JFK's assassination to NARA for publication. As the majority notes, however, the statute also provides that "[n]othing in [the JFK] Act shall be construed to eliminate or limit any right to file requests with any executive agency or seek judicial review of the decisions pursuant" to FOIA. JFK Act, Pub. L. 102-526, § 11(b). The majority apparently reads this language to mean that the public may "file" a FOIA request but an agency has no duty to collect and produce documents it has already transferred to NARA. Maj. Op. 10. If the JFK Act ensures the public's right to "file" a FOIA request, it necessarily preserves the agency's duty to respond to that request. The right to file means little if the agency replies with nothing more than a letter. And we have so noted: "[section] 11(b) . . . provides that the [JFK] Act does not limit or eliminate *any rights* under FOIA." *Assassination Archives & Research Ctr. v. DOJ*, 43 F.3d 1542, 1544 (D.C. Cir. 1995) (emphasis added). Other circuits agree with this common-sense interpretation of the JFK Act. *See, e.g.*, *Minier*

*v. CIA*, 88 F.3d 796, 802-03 (9th Cir. 1996) ("[W]e hold that the JFK Act has no direct bearing on [a plaintiff's] FOIA request.").

The CIA's *eventual* document production here illustrates the difference between FOIA and the JFK Act. When Morley first made his request, neither he nor the CIA knew whether the documents he requested had been transferred to NARA. As it turns out, only 113 of the 524 documents were ever transferred. *Morley X*, 245 F. Supp. 3d at 76. If not for Morley's lawsuit, the CIA never would have disclosed those non-transferred 411 documents. More to the point, neither statute justifies the CIA's withholding the documents. Under these facts, I believe it was legal error to conclude that the CIA's position was reasonable. *See Koon*, 518 U.S. at 100.

In sum, I believe the district court erred on two levels: it erred in evaluating each of the four factors individually and abused its discretion in weighing them against one another. Accordingly, this case does not call for "[d]eference piled on deference." Maj. Op. 11. It calls for an adherence to *Davy IV* and our four earlier *Morley* opinions. Because I believe the district court ignored our mandate and misapplied our precedent, I would vacate the district court order a fifth time and remand with instructions to award Morley the attorney's fees to which he is entitled.

Accordingly, I respectfully dissent.